AKRON CORP., Plaintiff-Appellant,

v.

M/T CANTIGNY, her engines, tackle, apparel, etc., in rem, and Grand Bassa Tankers, Inc., in personam, Defendants-Appellees.

VICTORY TRANSOCEAN SHIPPING, S.A. Rederi A/B Zenit, Plaintiffs-Appellants,

v.

M/T CANTIGNY, in rem, et al., Defendants-Appellees.

No. 82–3345.

United States Court of Appeals, Fifth Circuit.

May 31, 1983.

Rehearing and Rehearing En Banc Denied July 18, 1983.

152

Gelpi, Sullivan, Carroll & LaBorde, Gerard T. Gelpi, Randall C. Coleman, III, New Orleans, La., for plaintiffs-appellants.

Terriberry, Carroll Yancey & Farrell, Alfred M. Farrell, New Orleans, La., for defendants-appellees.

Before CLARK, Chief Judge, THORNBERRY and RANDALL, Circuit Judges.

PER CURIAM:

The M/T CANTIGNY grounded March 22, 1980 in the Southwest Pass of the Mississippi River as it attempted to negotiate the sharp exit turn into the Gulf of Mexico. The vessel went aground at 10:14 p.m. approximately 21 miles below Head of Passes. The grounding effectively prevented other large vessels from passing this entry and exit point from the river. The owners and time charterers of vessels blocked upriver brought this action seeking to recover from the owners of the CANTIGNY damages caused by the delays which ensued. The district court granted the defendant's motion for summary judgment on the basis that this action is controlled by the authorities cited in *Kingston Shipping Co., Inc. v. Roberts,* 667 F.2d 34 (11th Cir.1982) as interpreted by that court. We affirm.

The CANTIGNY'S grounding prompted the United States Coast Guard to close the Southwest Pass from 5:30 p.m. March 24 to 8:10 a.m. March 28. During this time, the M/S AKRON was completing loading at the Mississippi River Grain Elevator at Myrtle Grove, Louisiana. The pilot became aware of the downriver blockage and headed upriver for the nearest anchorage. When the AKRON received notice March 28 that the Pass was clear for vessel traffic, it was too late in the day to obtain a pilot to take her through that day. The owners of the AKRON seek recovery for demurrage, additional fuel expenses, tug hire, pilot fees and expenses for the delay from 10:30 a.m. March 24, when it left the grain elevator, until 8:43 a.m. March 29, when it passed the elevator headed downriver. The owners and time charterers of the M/T THALASSINI DOXA seek delay damages for the period from 3:20 p.m. March 24, when the THALASSINI DOXA anchored at the 12-mile anchorage under the orders of the Coast Guard, until 8:15 p.m. March 29, when the vessel weighed anchor and headed for the Gulf.

In *Kingston,* the owners of vessels whose passage into or out of the Port of Tampa was delayed because a sunken vessel blocked the main ship channel of Tampa Bay. sought delay damages. The eleventh circuit affirmed the district court's dismissal of the suits for failure to state a claim upon which relief could be granted. The *Kingston* court found the question to be governed by the rule of *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), and its Fifth Circuit progeny, *Vicksburg Towing Co. v. Mississippi Marine Transport Co.,* 609 F.2d 176 (5th Cir.1980); *Louisville and Nashville*

*Railroad Co. v. M/V Bayou Lacombe,* 597 F.2d 469 (5th Cir.1979); *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023 (5th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). *Kingston,* 667 F.2d at 35. We agree.

*Robins* stands for the proposition that a party may not recover for economic losses not associated with physical damages. *Id.* The rule's purpose is to prevent limitless liability for negligence and the filing of law suits of a highly speculative nature. This court noted in *Bayou Lacombe* that "[w]hatever the wisdom of the traditional rule of nonliability for negligent acts causing economic loss, *Robins* reflects the state of law in this circuit." 597 F.2d at 472.

The analysis from *Bayou Lacombe* is particularly appropriate in this case. The M/V Bayou Lacombe struck a bridge which crossed the Tennessee River. The Louisville and Nashville Railroad was forced to reroute its trains while the bridge was repaired. It sued to recover damages for its loss of the use of the bridge, a right for which it had contracted. This court ruled that negligent interference with a right-of-way privilege that arises out of a contract does not create a cause of action, because such a claim is precluded by *Robins. Id.* at 474. There is no principled way to distinguish *Bayou Lacombe* from this case. Here the cause asserted is a negligent interference with a right-of-way that arises out of a public right of use. That the basis for the right to use a way is a contractual right rather than a public one, is a distinction without a difference. The crux of the issue is whether a third party which suffers no actual physical harm as a result of a negligent act which blocks a right-of-way may sue to recover economic damages resulting from that interference. The *Robins, Kingston,* and *Bayou Lacombe* cases say no.

AFFIRMED.