**NAVIERA MAERSK ESPANA, S.A.**

v.

**CHO–ME TOWING, INC.**

Civ. A. Nos. 91–CV–575, 91–CV–822 and 91–CV–1645.

United States District Court, E.D. Louisiana.

Jan. 22, 1992.

Robert Hugh Murphy, Thomas Deming Forbes, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiff in No. 91–CV–575.

Jon Wesley Wise, Paul N. Vance, Rice, Fowler, Kingsmill, Vance & Flint, New Orleans, La., for defendants in No. 91–CV–575.

John Francis Young, Jr., Alan Guy Brackett, Hebert, Mouledoux & Bland, New Orleans, La., for plaintiffs in No. 91–CV–822.

Jon Wesley Wise, Paul N. Vance, Rice, Fowler, Kingsmill, Vance & Flint, Scott Rodgers Wheaton, Jr., Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans, La., for defendants in No. 91–CV–822.

Gary Alan Hemphill, William Briggs Hopson, III, Terriberry, Carroll & Yancey, New Orleans, La., for plaintiff in No. 91–CV–1645.

John Francis Young, Jr., Alan Guy Brackett, Hebert, Mouledoux & Bland, Jon Wesley Wise, Paul N. Vance, Rice, Fowler, Kingsmill, Vance & Flint, New Orleans, La., for defendants in No. 91–CV–1645.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendant Cho-me Towing Company's ("Cho–Me's") Motion for Partial Summary Judgment seeking dismissal of all claims for economic loss asserted herein against it by plaintiffs, L & L Fleeting, Inc. ("L & L"), Cooper/T. Smith Stevedoring Co., Inc. ("Cooper/T. Smith"), Plimsoll Marine, Inc. ("Plimsoll"), and Elmar Marine Corporation d/b/a Darrow Fleeting & Switching ("Darrow") arising out of the allision between the M/V Noble C. Parsonage and her tow with the M/V Maersk Mostoles on February 27th, 1990.

Plaintiffs filed a memorandum in opposition pointing out that Plimsoll had not asserted a claim for economic loss, and therefore, Cho–Me's motion as to Plimsoll is moot, as no such claims have been raised. Plaintiffs further do not contest the merit in Cho–Me's motion to the extent it seeks dismissal of a claim for economic losses on behalf of Darrow. However, both L & L Fleeting and Cooper/T. Smith argue the motion is without merit as to their claims for economic losses asserting that: (1) L & L has a proprietary interest in the operation of anchorage and cargo transferring facility at the Mile 175.3 berth, as sole permit holder for aforesaid facility; and (2) Cooper/T. Smith and L & L constitute an "integrated unit" with respect to the operation of the Mile 175.3 unloading facility.

Defendant's motion was set for oral argument on January 22nd, 1992, but was submitted on the briefs.

I. *Uncontested Facts.*

Aforesaid plaintiffs are separate corporate entities. L & L operates a mid-stream berthing/unloading facility at Mile 175.3 on the Mississippi River near Darrow, Louisiana. L & L constructed and owns the pilings, anchors and buoys which constitute the facility, and obtained a permit to use that portion of the river from the U.S. Army Corps of Engineers. Cooper/T. Smith, Darrow, and Plimsoll are not permit holders of the Mile 175.3 facility. None of

the four plaintiffs owns the river bottom at the aforesaid facility, which is in fact owned by the State of Louisiana.

Defendant Cho–Me is the owner and operator of the M/V Noble C. Parsonage. Plaintiffs are claiming damages as a result of the collision between part of the tow of the M/V Noble C. Parsonage and the anchor chain of the M/V Maersk Mostoles on or about February 27, 1990, which collision resulted in the sinking of the CA–307B, which blocked ingress/egress to L & L's facility. Plaintiffs further claim certain physical damages to their property as a result of the allision including damages to L & L's mooring buoy and damages to Cooper/T. Smith's Rig LST.

L & L Fleeting claims the following damages: post-accident investigation and survey expenses [i.e., crane and survey charges amounting to $12,713.00] and a loss of tug wire worth $500.00; crane charges of $4,200.00; minor scrapes and dents in their buoys located at Mile 175.3 for which L & L has claimed no financial loss; and economic loss in the form of blockage to the Mile 175.3 berth by the sunken barge CA–307B and lost revenues for the use of the Mile 175.3 berth in the approximate amount of $133,750.00.

In addition to other damages set forth in its responses to discovery, Cooper/T. Smith admits claims for the following damages: $1,500.00 worth of alleged damage to its LST for which repairs were not performed; indemnification for a $2,680.00 claim against Cooper/T. Smith by the barge CCT–136B which claim has been resolved; and economic loss in the form of lost revenues in the amount of $43,000.00.

Accordingly, it is undisputed that both L & L and Cooper/T. Smith actually sustained physical damage to property due to the allision caused by Cho–Me, to wit: (1) L & L's mooring buoys were physically damaged[1]; and (2) Cooper/T. Smith's Rig LST was physically damaged[2].

The basis for both L & L and Cooper/T. Smith's claims for economic loss is not the physical damage discussed above, but rather, that Barge CA–307B was caused to sink in the Mile 175.3 berth and that blocked the berth until removed. L & L submits that the blockage of the berth constitutes damage to property for which it is entitled to recover economic loss [i.e. the loss of use of its facility]. Cooper/T. Smith claims loss of revenues in the amount of $43,000 because two ships were refused for stevedoring and it was part of an integrated unit working in conjunction with L & L Fleeting at the 175.3 berth. In other words, both L & L and Cooper/T. Smith's claims for economic loss are admittedly not associated with any physical damage to property which they own or have a proprietary interest in within the meaning of the governing law set forth herein below.

## II. *The Law.*

There appears no way around the broad pronouncement in *Akron Corp. v. M/T Cantigny,* 706 F.2d 151, 153 (5th Cir.1983), and accordingly this Court is bound by it. The Fifth Circuit in *Akron* stated:

> *Robins* [3] stands for the proposition that a party may not recover for economic loss not associated with physical damages. The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature. This court noted in *Bayou Lacombe* [4] that '[w]hatever wisdom of the traditional rule of nonliability for negligent acts causing economic loss, *Robins* reflects the state of law in this circuit.'

---

**1.** Although L & L claims damage to mooring buoys, the damage was negligible and it has asserted no claims for their repair. *See,* Answers of L & L Fleeting to Interrogatories (Defendant's Exh. "E").

**2.** Cooper has performed no repairs on the LST.

**3.** *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).

**4.** *Louisville and Nashville Railroad Co. v. M/V Bayou Lacombe,* 597 F.2d 469 (5th Cir.1979) (stands for the proposition that a right of use possessed by one party over another's property does not constitute the requisite proprietary interest to assert a claim for economic loss).

The analysis from *Bayou Lacombe* is particularly appropriate in this case. The M/V Bayou Lacombe struck a bridge which crossed the Tennessee River. The Louisiana and Nashville Railroad was forced to reroute its trains while the bridge was repaired. It sued to recover damages for its loss of use of the bridge, a right for which it contracted. This court ruled that negligent interference with a right-of-way privilege that arises out of contract does not create a cause of action, because such a claim is precluded by *Robins*. There is no principled way to distinguish *Bayou Lacombe* from this case. Here the cause of asserted is a negligent interference with a right-of-way that arises out of a public right of use. *That the basis for the right to use a way is a contractual right rather than a public one, is a distinction without a difference.* The crux of the issue is whether a third party which suffers no actual physical harm as a result of a negligent act which blocks a right-of-way may sue to recover economic damages resulting from that interference. The *Robins, Kingston*[5], and *Bayou Lacombe* cases say no.

*Id.* at 153 [citations omitted and emphasis supplied].

Defendant aptly argues that although L & L has a permit from the Army Corps of Engineers to operate the berth at Mile 175.3, it conveys no proprietary rights, citing Section "h" of the General Conditions Section of aforesaid permit, which provides:

That this permit does not convey any property rights, either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to property or invasion of rights or any infringement of Federal, State, or local laws or regulations, not does it obviate the requirement to obtain State or local assent required by law for this activity authorized herein. (Defendant's Exh. "A").

In *State ex rel. Guste v. M/V TEST-BANK*, 752 F.2d 1019 (5th Cir.1985), the Fifth Circuit clearly defines the term "proprietary interest" to mean that a party must have control over the property tantamount to full ownership.[6] The Fifth Circuit recognized that "the bright line rule of damage to a proprietary interest, as most, has the virtue of predictability with the vice of creating results in cases at its edge that are said to be 'unjust' or 'unfair.'"[7] *Id.* at 1029. However, upon reexamination of the history and central purpose of the "pragmatic restriction on the doctrine of foreseeability" [i.e., the *Robins* rule], the Fifth Circuit concluded "that without this limitation foreseeability loses much of its ability to function as a rule of law." *Id.* at 1021.

Under the undisputed facts reiterated above, L & L is without the wide ranging control over the 175.3 berthing area [i.e., the water and the waterbottom at that point in the Mississippi River] which is necessary to constitute a proprietary interest within the meaning of the law heretofore related. This Court is bound by the strict dictates of *Robins* and *TESTBANK*, and the rights of plaintiffs are circumscribed accordingly.

The Fifth Circuit's pronouncement in *Nicor Supply Ships Associates v. General Motors*, 876 F.2d 501 (5th Cir.1989) obviates any argument to the effect that physical damage to *any* property owned by the plaintiffs is sufficient to satisfy the *Robins* rule. In *Nicor*, the Fifth Circuit was straightforward in its ruling that to be recoverable, the economic loss claimed must flow directly from the alleged physical damage to plaintiff's property, to wit:

Having sustained 'physical injury to a proprietary interest,' Digicon [the time-

---

**5.** *Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34 (11th Cir.1982).

**6.** In *TESTBANK*, the Fifth Circuit observed:
We asserted that the distinction between recovery by an owner when his property was damaged and recovery of others, as applied in *Robins, Dick Meyers* [*Towing Service, Inc. v.*

*United States*, 577 F.2d 1023 (5th Cir.1978) ], and *M/V Bayou Lacombe* was 'meaningful, real and dispositive.' 752 F.2d at 1024 [citations omitted].

**7.** It is this Court's opinion that the case at bar is one of those cases "at its edge."

charterer] may recover for economic loss as well, but its recovery for loss of profits is limited to losses resulting from its inability to use the 'other property' it placed on the vessel as a result of the casualty. *Digicon is not entitled to recover for its loss of profits resulting from its inability to use the vessel itself or its inability to use the 'other property' if it resulted solely from the inability of the vessel itself.*

*Id.* at 506 [emphasis supplied].

Because the claims herein of L & L and Cooper/T. Smith for physical damage to the mooring buoy and the LST, respectively, admittedly bear no relation to their claims for economic loss, aforesaid plaintiffs have no right to recover for such economic loss.

The holding of this Court above, renders the issue of whether Cooper/T. Smith constitutes an "integrated unit" moot. Considering the foregoing, the submissions of the party and the law, and that there appears no genuine issue as to material fact, under F.R.C.P. Rule 56, defendant is entitled to partial summary judgment dismissing plaintiffs' claims for economic loss. Accordingly,

IT IS ORDERED that defendant Cho–Me's Motion for Partial Summary Judgment is hereby granted in its favor and against plaintiffs[8], L & L, Cooper/T. Smith's dismissing aforesaid plaintiffs' claims for economic loss.

8. Plaintiffs, Plimsoll Marine, Inc., and Darrow Fleeting & Switching, have stipulated that they have no claims for loss of use of the facility at issue.