STAR ENTERPRISE, Saudi Refining, Inc., Texaco Refining and Marketing (East) Inc., and Texaco Chemical Company, Plaintiffs,

v.

M/V SOLENA, her Engines, Tackle, Appurtenances, Official No. 8003, In Rem, Solena Shipping Co., Deutsche Shell Tanker, GmbH, Shell International Petroleum Company Limited, and Shell International Marine Limited, In Personam, Defendants.

Civ. A. No. B–90–239–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

June 4, 1992.

Michael Carlisle Farrow, Clann, Bell & Murphy, Houston, Tex., for plaintiffs.

Mark A. Freeman, Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHELL, District Judge.

CAME ON TO BE HEARD this day the defendants' motion for partial summary judgment, and the court, after considering the motion, the plaintiffs' response, the defendants' reply, and all affidavits and exhibits is of the opinion that the defendants' motion for partial summary judgment should be DENIED. The court finds that Saudi Refining, Inc. ("SRI") has a proprietary interest in the dock facility damaged by the defendants, and that SRI may assert a claim for consequential damages since such damages, if any, were the result of SRI's inability to use its dock.

## BACKGROUND

This is a lawsuit to recover damages incurred as a result of an allision on March 26, 1990, between the M/V SOLENA and a dock facility on the Neches River in the City of Port Neches, Texas ("Dock"). The Dock was jointly owned by Star Enterprise and Texaco Chemical Company. Liability for physical damage was stipulated to by the defendants on November 21, 1991, in a "Stipulation of Liability." The issues that remain are the defendants' liability for, and the amount of, consequential damages for additional crude oil delivery costs incurred by SRI as a result of the damage to the Dock.

## BURDEN

■ A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See Celotex*, 106 S.Ct. at 2552–53. A party opposing a properly supported motion for summary judgment must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2513; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

## CONTENTIONS

### Movants

The defendants, movants, contend that the holding in *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1020 (5th Cir.1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), entitles them to summary judgment. The Fifth Circuit in *TESTBANK* refused to abandon the rule announced in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), that physical damage to a proprietary interest is a prerequisite to recovery for economic loss in cases of unintentional maritime tort. *Id.* The defendants contend that the legal synonym for "proprietary interest" is ownership. *TESTBANK*, 752 F.2d at 1034 (Williams, J., concurring). The defendants assert that SRI did not own the damaged Dock. The defendants further assert that even if SRI owns an interest in the Dock, it suffered no consequential damages as Dock owner, but suffered consequential damages only as a shipper of cargo. Therefore, according to the defendants, SRI is not entitled to recover damages for consequential economic loss. Thus, the defendants' claim their motion for summary judgment should be granted.

### Nonmovant

SRI, nonmovant, argues that it has a proprietary interest in the Dock through Star Enterprise, a general partnership between SRI and Texaco Refining and Marketing (East) Inc. ("TRMI"). Star Enterprise has an 80% undivided interest in the Dock. SRI has a 50% partnership interest in Star Enterprise, which gives it a 40% interest in the Dock. SRI argues that its 40% interest in the Dock satisfies the proprietary interest required by the holdings in *Robins Dry Dock* and its Fifth Circuit progeny. Consequently, the defendants' motion for summary judgment should be denied because SRI has an ownership interest in the Dock, and SRI's consequential damages flowed from the damage to the Dock. In other words, SRI argues that the rule of *Robins Dry Dock* and *TESTBANK* does not apply.

## THE LAW

In *Robins Dry Dock*, 275 U.S. at 309, 48 S.Ct. at 135, the Supreme Court held that

> ... as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong.

The seminal case in the Fifth Circuit interpreting the rule of *Robins Dry Dock* is *TESTBANK*. In *TESTBANK*, the Fifth Circuit, sitting *en banc*, affirmed a district court's ruling that physical damage to a proprietary interest is a prerequisite to recovery for economic loss in cases of unintentional maritime tort. *TESTBANK*, 752 F.2d at 1021. More recently, in *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465 (5th Cir.1991), the Fifth Circuit stated that

> ... it is the law in this Circuit that a plaintiff in an admiralty case cannot recover negligently inflicted economic losses where there is no physical damage to any property in which the plaintiff has a proprietary interest.

*Pennzoil Producing Co.*, 943 F.2d at 1473. It is undisputed that the Dock was physically damaged by the defendants.

The issue now becomes did SRI have a "proprietary interest" in the damaged Dock. In this circuit "proprietary interest" has been interpreted "to mean that a party must have control over the property tantamount to full ownership." *Naviera Maersk Espana, S.A. v. Cho–Me Towing, Inc.*, 782 F.Supp. 317, 320 (E.D.La.1992); *TESTBANK*, 752 F.2d at 1034 (Williams, J., concurring) ("... the legal synonym for 'proprietary interest' is ownership...."); *see also Vicksburg Towing Co. v. Mississippi Marine Transp. Co.*, 609 F.2d 176,

177 (5th Cir.1980) (The difference between recovery by an owner when his property was damaged and recovery by others is "meaningful, real, and dispositive."). Therefore, the defendants, movants, must show that, as a matter of law, SRI does not have an ownership interest in the damaged Dock in order to meet their summary judgment burden.

ANALYSIS

It is undisputed that TRMI deeded the Dock to Star Enterprise pursuant to a "Special Warranty Deed", that 20% of the Dock is owned by Texaco Chemical Company and the remaining 80% by Star Enterprise, and that Star Enterprise is a general partnership formed under the New York Uniform Partnership Act between SRI and TRMI. Both SRI and TRMI have a 50% interest in Star Enterprise, giving each of them a 40% interest in the Dock. The defendants argue that the "Special Warranty Deed" gave Star Enterprise an ownership interest in the Dock, leaving SRI with an interest in the partnership, but no ownership interest in the Dock.

■ Once the Dock was conveyed to the partnership it became specific partnership property. N.Y.Partnership Law § 50 (McKinney 1988). The conveyance of the Dock to the partnership for use by the partnership, and not to SRI, does not mean that SRI has no ownership interest in the Dock. SRI is a co-owner of the Dock, holding it as a tenant in partnership. N.Y.Partnership Law § 51(1) (McKinney 1988). As the defendants allege, SRI's interest is not equivalent to full possession, however, it does exercise control over the use of the Dock through its representatives on the management committee of Star Enterprise. "Joint Venture Agreement" at § 3.1. The committee consists of 3 representatives from each general partner, and it is undisputed that control of the Dock is vested in the management committee. Thus, 80% of the control is vested in the two general partners, one of which is SRI.

Finally, the transfer of the Dock to Star Enterprise was made subject to an "Asset Transfer Agreement." In the agreement, TRMI agreed to sell and transfer to SRI a 50% undivided interest in the partnership assets which included the Dock. The purchase price for SRI's 50% interest was $812 million. Therefore, as the aforementioned analysis shows, SRI, through its general partnership with TRMI, has an ownership interest in the damaged Dock.

CONCLUSION

SRI, as a general partner in Star Enterprise, owns a 40% interest in the damaged Dock, and SRI's consequential damages, if any, flowed from its inability to use the Dock for offloading oil. Therefore, defendants have not met their summary judgment burden to demonstrate that SRI's claim for consequential damages is barred by the rule announced in *Robins* and *TESTBANK*, and their motion is hereby DENIED.