In re **ORIENTAL REPUBLIC OF URUGUAY (Commando General de La Armada and Servicio de Bugues Auxuliares) as Owner and Operator of the M/V PRESIDENTE RIVERA for exoneration from or limitation of liability.**

Civ. A. No. 90–404–SLR.

United States District Court, D. Delaware.

Jan. 6, 1993.

---

Michael B. McCauley, Palmer, Biezup & Henderson, Wilmington, DE, and Kevin G. O'Donovan, Palmer, Biezup & Henderson, Philadelphia, PA, for claimant DE Terminal Co.

Peter E. Hess, Wilmington, DE, for claimants I Did the Delaware, Old Seventh Street Boat Yard, Inc., Up the Creek Restaurant and Bar, Inc., and Phillips Holding Co., Ltd.

Jeffrey Weiner, Law Offices of Jeffrey Weiner, Wilmington, DE, and Gerald J. Williams, Mark R. Cuker, and Alan H. Casper, Williams & Cuker, Philadelphia, PA, for claimants Penns Grove NJ Residents.

Paul M. Lukoff, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, and Edward C. Radzik, and James P. Krauzlis, Donovan, Parry, Walsh & Repetto, New York City, for claimant Petroleo Brasileiro S.A.

Wanda Chin Monahan, Dept. of Law and Public Safety, Div. of Law, and Martin J. McHugh, Hazardous Waste Litigation Section, Div. of Law, Trenton, NJ, for claimant State of NJ.

James S. Green, Duane, Morris & Heckscher, Wilmington, DE, and Francis J. Deasey, Deasey, Mahoney & Bender, Ltd., Philadelphia, PA, for claimants Sun Refining and Marketing Co. and Sun Oil Trading Co.

Patricia C. Hannigan, U.S. Attys. Office, Wilmington, DE, Michael McIntyre, Environment & Natural Resources Div., EES, Washington, DC, and Peter F. Frost, Torts Branch, Civ. Div., Washington, DC, for claimant U.S.

## OPINION

SUE L. ROBINSON, District Judge.

### I. Introduction

On June 24, 1989, the M/V PRESIDENTE RIVERA, an oil tanker owned and operated by the government of the Oriental Republic of Uruguay ("Limitation Plaintiff"), ran aground in the Delaware River. The tanker's hull ruptured and the vessel subsequently discharged over 183,000 gallons of fuel oil into the water.

Francis J. Murphy, and Randall E. Robbins, Ashby & Geddes, Wilmington, DE, for plaintiffs Oriental Republic Uruguay, Presidente Rivera, Servicio de Bugues Auxiliares de La Armada and Captain Raul DiBarrart.

Jeanne L. Langdon, and Keith A. Trostle, DE Dept. of Justice, Wilmington, DE, for claimant State of DE.

It is undisputed that the oil spill caused by the grounding of the PRESIDENTE RIVERA resulted in extensive damage to the shores and waters of the United States, Delaware, New Jersey and Pennsylvania requiring massive clean-up efforts. In addition, a substantial amount of private property damage apparently resulted from the spill. As a result of this oil spill, numerous parties commenced legal action against the Oriental Republic of Uruguay as owner and operator of the PRESIDENTE RIVERA.

Uruguay responded to these lawsuits by instituting the instant proceeding which seeks exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C.App. § 183(a). Various governmental entities, specifically the United States of America and the states of Delaware, New Jersey and Pennsylvania, filed claims against Limitation Plaintiff in this limitation of liability proceeding. Additionally, a number of private parties also filed claims against Limitation Plaintiff.

Presently before the Court are two motions. Claimants Sun Refining and Marketing Company and the Sun Oil Trading Company (collectively referred to herein as "Sun") move for partial summary judgement on the issue of Limitation Plaintiff's liability in negligence for various damages Sun allegedly sustained in connection with the PRESIDENTE RIVERA's grounding and discharge of oil in the Delaware River. Limitation Plaintiff counter-moves for summary judgment as to Sun's claim against it.

## II. Claimant Sun's Motion for Partial Summary Judgment and Limitation Plaintiff's Counter–Motion for Summary Judgment

Sun and Limitation Plaintiff stipulated to the facts which, according to them, are relevant and material to these motions (D.I. 126). It is undisputed that the M/V PRESIDENTE RIVERA grounded and discharged a substantial quantity of oil into the Delaware River at a location proximate to Sun's refinery and terminal located in Marcus Hook, Pennsylvania (the "Sun Terminal"). "As a result of the grounding and spillage, the Delaware River was closed to river traffic both inbound and outbound for a period of several hours." (D.I. 126 at ¶ 11). Additionally, "[w]ithin hours after the vessel's grounding, all movements of the vessel had to be approved by the U.S. Coast Guard Captain of the Port, Philadelphia [ (the "Coast Guard") ]." (D.I. 143 at A–6).[1] Under the direction of the Coast Guard, the PRESIDENTE RIVERA was docked at the Sun Terminal on or around June 25, 1989. (See D.I. 143 at A–6; D.I. 142 at 4 n. 2). The ship remained at the 3A dock of the Sun Terminal until July 9, 1989, when the Coast Guard granted permission for the tanker's departure. (D.I. 143 at A–6).

The stipulated facts indicate that Sun incurred two types of damages as a result of Limitation Plaintiff's alleged negligence in connection with the PRESIDENTE RIVERA's grounding and discharge of oil. First, Sun sustained physical property damage as a result of oil pollution reaching the Sun Terminal. According to the Stipulation of Facts, the following instances of physical property damage resulted from the oil spill: (1) "[T]he waterways in and about the Sun Terminal ... sustained pollution damage" (D.I. 126 at ¶ 21); (2) "several hundred feet of boom belonging to Sun sustained pollution damage" (D.I. 126 at ¶ 22); and (3) "the piers owned and operated by Sun suffered pollution damage...." (D.I. 126 at ¶ 24).

Demurrage charges and other economic losses related to Sun's contractual obligations are the second type of damages Sun sustained as a result of the PRESIDENTE RIVERA oil spill. The stipulated facts do not indicate, nor does Sun argue in its motion papers, that Sun's demurrage charges and other similar economic losses arose directly from the physical property damage sustained

---

1. Limitation Plaintiff's motion papers included an "ADDENDUM TO STIPULATION OF FACTS" (D.I. 142 at A–6 to A–7) which has not been signed by the attorneys in this matter and which also has not been formally filed with the Court and docketed. Nonetheless, since Sun has not disputed the factual allegations set forth in the addendum and since the record in this case, with which the Court is quite familiar, supports these averments of fact, the Court will treat these allegations as undisputed material facts.

at the Sun terminal. Rather, the stipulated facts demonstrate that these economic losses resulted either from the closing of the Delaware River to river traffic or from the unavailability of the 3A Sun Terminal dock.

Sun specifically claims that it sustained (1) demurrage charges when the M/V JAHRE TRANSPORTER was delayed in its shipment of crude oil to the Sun Terminal "while the Delaware River was closed to traffic" (D.I. 126 at ¶¶ 12–14); (2) demurrage charges resulting from delay in the cargo discharge of the M/V TEXAS SUN due to the fact that the "3A dock was unavailable for use by Sun" "[w]hile the [RIVERA] was docked at ... the Sun Terminal" (D.I. 126 at ¶ 15); and (3) demurrage charges and other economic losses in connection with the rerouting and change in delivery of a Sun shipment of No. 6 oil that resulted "[d]ue to the unavailability of the 3A dock." (D.I. 126 at ¶¶ 16–20). The motions at bar address the viability of Sun's negligence claims for these demurrage charges and other economic loss damages which resulted from the closing of the Delaware River to river traffic and from the unavailability of Sun's 3A dock.

■ Sun posits that the "issue before the Court ... [is] whether the rule of law in *Getty Refining and Marketing Company v. MT FADI B*, 766 F.2d 829 (3d Cir.1985), applies to and, therefore, precludes [Sun's] recovery for economic losses sustained including ... demurrage charges, extracontractual expenses and contractual damages." (D.I. 125 at ¶ 18). The Court agrees that Sun's ability to recover demurrage charges and other similar economic losses largely turns on the applicability of the *FADI B* case to the claim at bar.

The facts of the *FADI B* case are remarkably similar to the facts here, with one noteworthy difference. In *FADI B*, the operator of a marine terminal sued for damages allegedly sustained when the M/V FADI B was docked at the operator's terminal by order of the U.S. Coast Guard after a rupture in the ship's hull was discovered. The terminal operator, like Sun here, sought demurrage charges and expenses related to the rescheduling of other vessels necessitated by the unavailability of its dock. Significantly, in *FADI B*, the parties stipulated that there was no physical property damage to the plaintiff's dock or marine terminal, whereas in the case at bar the parties stipulated that Sun suffered physical property damage at its terminal.

■ Consistent with "the rule defined by Justice Holmes in *Robins [Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927)]², incorporated in the Restatement of Torts (Second) § 766C, and embraced by the leading commentators", the Third Circuit held in *FADI B* that where recovery is sought in negligence for economic losses, if the alleged "negligence [did] not result in physical harm, thereby providing no basis for an independent tort, and ·the plaintiff suffers only pecuniary loss, [then] he may not recover for the loss of the financial benefits of a contract or prospective trade." 766 F.2d at 833. In other words, only a plaintiff suffering physical harm to his person or land or chattels may sue for negligent interference with contractual interests. *See id.* at 834. In *FADI B*, the Third Circuit emphasized, however, that the *Robins* rule "applies [solely] when the plaintiff suffers only pecuniary loss" and does not apply when the defendant's negligence "results in physical harm to [the plaintiff's] person or land or chattels and causes pecuniary loss" by interfering with the plaintiff's contractual rights and interests. *Id.* at 833.

Sun essentially contends that under the physical harm exception to the *Robins* rule of limitation, a plaintiff sustaining "any physical damage to [its] personal or real property" may recover in negligence for its economic losses arising from the maritime accident, irrespective of whether there is any direct connection between said physical property damage and the plaintiff's economic loss.

Limitation Plaintiff concedes that a negligence claim for economic loss is sustainable

---

**2.** Broadly stated, the *Robins* doctrine creates a "bright line" rule of limitation under which a plaintiff cannot recover economic loss damages resulting from negligent interference with contractual rights unless the plaintiff also sustained some physical harm to person or to property as a result of the defendant's negligent conduct. *See FADI B*, 766 F.2d at 831–32.

where there is associated physical harm to personal or real property, but argues that *FADI B* and other relevant authorities allow for recovery of only economic loss which was directly caused by the underlying physical property damage. Limitation Plaintiff contends that the *Robins* rule precludes recovery by Sun of its economic loss damages because Sun's demurrage charges and change-in-schedule losses resulted not from the pollution damage which Sun sustained to its property, but, as in *FADI B*, from the inability of ships to gain normal access to claimant's terminal. The Court agrees.

It is clear, as discussed above, that Sun's demurrage charges and change-in-schedule losses all arise either from the closing of the Delaware River to river traffic or from the unavailability of the Sun Terminal 3A dock. These losses, according to the stipulated facts, did not arise from and were not directly caused by the physical oil pollution damage which the Sun terminal in fact sustained. Thus, the issue presented here is whether the physical harm exception to the *Robins* rule allows recovery in negligence, as Limitation Plaintiff contends, only for economic loss flowing directly from the plaintiff's physical damage, or, as Sun contends, for all economic loss sustained in connection with the maritime accident so long as the plaintiff sustained some physical property damage as a result of the defendant's negligent conduct. The Court finds, for reasons discussed below, that Limitation Plaintiff's interpretation of the *Robins* rule represents an accurate statement of the law.

The *FADI B* opinion itself contains *dicta* supporting the conclusion that the physical damage exception to the *Robins* rule of limitation applies only to claims for economic loss which arise directly from the underlying physical damage. In *FADI B*, 766 F.2d at 831–32, the Third Circuit quoted with approval section 766C of the Restatement (Second) of Torts, which reaffirms the *Robins* rule and states the rule in the following manner:

> One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently

> (a) causing a third person not to perform a contract with the other, or

> (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or

> (c) interfering with the other's acquiring a contractual relation with a third person.

(Emphasis supplied). Hence, under the Restatement's formulation of the *Robins* rule, there is an exception to the rule of preclusion where the plaintiff's alleged pecuniary or economic loss "deriv[ed] from physical harm" to the plaintiff. If the plaintiff's economic damages did not "deriv[e] from physical harm" to the plaintiff, then the *Robins* rule of limitation still applies, according to the language of the Restatement.

Furthermore, the rationale underlying the conclusion of the *FADI B* court that the plaintiff could not recover demurrage charges and rescheduling expenses applies with equal force to the case at bar. In particular, the Third Circuit provided the following well-reasoned explanation for its decision:

> The only injury [the terminal operator plaintiff] established ... was the payment of demurrage charges to several vessels that were delayed due to the FADI B's extended stay at [plaintiff's] pier. It is clear that [plaintiff] incurred these damages solely because of its contractual relations with the various vessels. Similarly, any incidental expense incurred by [plaintiff] in rescheduling those delayed vessels into its pier arose from obligations [plaintiff] assumed by contract. [Plaintiff's] damages thus flow from its contractual duties; [plaintiff] has not established any damages arising by reason of its property right in the dock itself. Accordingly, ... [plaintiff's] claim [is] essentially one for negligent interference with performance of contracts. Construed as such, the claim falls squarely within the prohibition of *Robins*.

*MT FADI B*, 766 F.2d at 834.

The instant claim for demurrage charges and rescheduling expenses by a terminal operator (Sun) arising from the fact that the its

dock was blocked by a defendant's (Limitation Plaintiff) shipping vessel is indistinguishable from the same claim in *FADI B*, with one exception. Said exception, of course, is that here the terminal operator, Sun, actually suffered some physical property damage in connection with Limitation Plaintiff's alleged negligence. In the Court's view, this is a distinction without legal significance because here, as in *FADI B*, the terminal operator's demurrage charges and rescheduling expenses "flow[ed] from its contractual duties" and not from "any damages arising by reason of its property right in the dock itself." *Id.* at 834.

Consideration of the underpinnings of the *Robins* rule, which were discussed at length in the *FADI B* opinion, further supports the conclusion that recovery for economic loss damages can be obtained under the physical harm exception only insofar as those pecuniary losses flowed directly from the underlying physical harm. Two explanations, both of which were mentioned in the *FADI B* opinion, are most frequently offered as justifying the *Robins* rule of limitation. The first explanation for the rule can be summarized as follows:

> The policy against recovery based on negligence is rooted at least in part on what Professor James has called the "pragmatic" objection, that while physical harm generally has limited effects, a chain reaction occurs when economic harm is done and may produce an unending sequence of financial effects best dealt with by insurance, or by contract, or by other business planning devices.

*MT FADI B*, 766 F.2d at 832 (quoting W. Prosser & W. Keaton, The Law or Torts 1001 (5th Ed.1984)). The second justification for the "bright line" *Robins* rule is that "this approach has the virtue of what Holmes called 'predictability' and Llewellyn, 'reckonability,' by saying that the law shall go thus far and no further." *Id.* at 833.

It is clear to the Court that these goals would be undermined and that the *Robins* rule of limitation largely would be swallowed up by the physical loss exclusion if said exclusion were construed broadly in the manner suggested by Sun's position. Sun's interpretation of the *Robins* rule would undermine the rule's goal of imposing a "pragmatic" limitation on a defendant's potential liability for economic losses resulting from his negligence. The limitation rule seeks to limit the potentially "unending sequence of financial effects" which may occur from the "chain reaction" resulting when economic harm is done in connection with a negligent act or omission. For example, in the instant case, any number of persons, including small boat owners, restaurants and shipping concerns, as well as many others, may have incurred economic losses of various kinds as a result of the PRESIDENTE RIVERA oil spill. Seafood restaurants may have seen a substantial drop in patronage due to (perhaps unjustified) fears that local seafood may have been contaminated by the oil spill. Small boat owners may have been damaged economically when they were unable to navigate the Delaware River due to the closing of river traffic. Shipping concerns may have sustained pecuniary losses as a result either of the inaccessibility of the Sun Terminal or of the closing of the Delaware River to shipping traffic.

Obviously the number and variety of different forms of economic harm arguably resulting from Limitation Plaintiff's allegedly negligent discharge of oil into the Delaware River are limited only by the boundaries of human imagination. The *Robins* rule of preclusion prevents this unending chain of potential tort liability for economic losses by setting forth a bright line rule of limitation which discards traditional precepts of foreseeability and lack or remoteness and, for its touchstone of decision, relies instead on whether the alleged pecuniary loss resulted from physical harm arising from the defendant's negligence. If, however, any party who sustained some form of physical damage as a result of the defendant's alleged negligence were entitled to seek relief in tort for any and all economic losses incurred in connection generally with the defendant's negligence, irrespective of whether said economic damage had any relation to the physical harm sustained, then the *Robins* rule of limitation largely would be eviscerated. For example, the restaurant owners, boat owners

and shipping concerns described hypothetically above could easily circumvent the *Robins* rule by merely demonstrating that they incurred some amount of physical property harm, such as oil pollution damage, as a result of the PRESIDENTE RIVERA oil spill. Under Sun's interpretation of the *Robins* rule, these parties would be entitled to recover (in negligence) all their economic loss damages arising generally from the oil spill, irrespective of how insubstantial their physical property damage might be and without regard for whether their pecuniary losses were related to said property damage to any extent whatsoever.[3] Accordingly, the Court rejects Sun's broad construction of the physical harm exception and concludes that the physical harm exception to the *Robins* rule will apply only where the alleged economic harm derives directly from the plaintiff's physical property damage.

Other federal courts addressing this narrow issue of law[4] have reached the same conclusion which this Court now reaches, i.e., that "to be recoverable [in negligence], the economic loss claimed must flow directly from the alleged physical damage to plaintiff's property." *Naviera Maersk Espana, S.A. v. Cho–Me Towing, Inc.,* 782 F.Supp. 317, 320 (E.D.La.1992). The court in *Cho–Me Towing* stated the following with respect to this issue:

> The Fifth Circuit's pronouncement in *Nicor Supply Ships Associates v. General Motors,* 876 F.2d 501 (5th Cir.1989), obviates any argument to the effect that physical damage to *any* property owned by the plaintiffs is sufficient to satisfy the *Robins* rule. 782 F.Supp. at 320 (emphasis in

original). In *Nicor,* the Fifth Circuit was straightforward in its ruling that to be recoverable, the economic loss claimed must flow directly from the alleged physical damage to plaintiff's property....

782 F.Supp. at 320.[5] In addition, other cases where recovery was permitted under the physical harm exception to the *Robins* rule have similarly involved economic loss resulting directly from the physical damage itself. *See, e.g., Domar Ocean Transp., Ltd., Div. of Lee–Vac, Ltd. v. M/V ANDREW MARTIN,* 754 F.2d 616 (5th Cir.1985).

For all of the foregoing reasons, the Court holds that a plaintiff cannot recover economic loss damages in negligence under the physical property damage exception to the *Robins/FADI B* rule of limitation applicable in this circuit unless the plaintiff's economic loss damages derived directly from the physical property damage caused by the defendant's negligence.

### III. Conclusion

The Court finds, for the reasons discussed above, that Sun's motion for partial summary judgment, which seeks entry of an order declaring that Sun is "entitled to recover all provable economic damages including ... demurrage charges, extra contractual expenses and contractual damages which were incurred as a result" of the PRESIDENTE RIVERA oil spill and that the "[*Robins/FADI B* ] rule of law precluding recovery for economic loss ... is inapplicable to the present situation," must be denied.

---

**3.** Furthermore, the "bright line" rule contemplated by *Robins* and *FADI B* would be substantially blurred under this interpretation. The pragmatic limitation imposed by the *Robins* rule as well as the rule's utility, ease of application and predictability all would be undermined if Sun's interpretation of the rule were adopted here.

**4.** The parties have not cited nor is the Court aware of any reported decision from this circuit which addresses the narrow question presented here.

**5.** The language from the Fifth Circuit's opinion in *Nicor* upon which the district court in *Cho–Me Towing* relied is as follows:

> Having sustained 'physical injury to a proprietary interest,' Digicon [the time-charterer of a damaged shipping vessel] may recover for economic loss as well, but its recovery for loss of profits is limited to losses resulting from its inability to use the 'other [damaged] property' it placed on the vessel as a result of the casualty. Digicon is not entitled to recover for its loss of profits resulting from its inability to use the vessel itself or for its inability to use the 'other property' if that resulted solely from the disability of the vessel itself.
> *Nicor Supply Ships Associates,* 876 F.2d at 506 (citing, *inter alia, Robins Dry Dock,* 275 U.S. at 308–09, 48 S.Ct. at 135–36) (footnotes omitted).

■ As to Limitation Plaintiff's motion for summary judgment with respect to the claims of Sun against it, it is not entirely clear that all of Sun's alleged damages are precluded by the *Robins* rule. It appears from the record that Sun seeks damages for some physical property damage, as discussed above, which resulted from Limitation Plaintiff's allegedly negligent grounding of the PRESIDENTE RIVERA and subsequent discharging of oil into the Delaware River. (See D.I. 125, Exhibit B at ¶ 9).[6] The *Robins* rule of limitation does not preclude recovery for this alleged property damage. Accordingly, Limitation Plaintiff's motion for summary judgment will be granted only insofar as it seeks dismissal of Sun's claims for economic loss damages which are not derived directly from physical property damage, that is, only insofar as Sun's claims are precluded by the *Robins/MT FADI B* rule of limitation. To the extent that Limitation Plaintiff seeks summary judgment as to Sun's physical property damage claims or as to economic loss damages flowing directly from said physical property damage, Limitation Plaintiff's motion will be denied.

An Order consistent with this Memorandum opinion shall issue.

---

6. The Court is aware that the parties stipulated that the pollution damage sustained at the Sun Terminal "was duly cleaned by contractors engaged and paid by [Limitation Plaintiff]." (D.I. 126 at ¶ 25). However, there are various damage claims set forth in Sun's Claim and Answer (See D.I. 125, Exhibit B at ¶ 9) which are not addressed in the stipulation and which may be redressable in negligence.