**J. RAY McDERMOTT & CO., Inc.,**
**Plaintiff-Appellee,**

**v.**

**The SS EGERO, her engines, tackle, etc.,**
**Skjelbreds Rederi A/S, Defendants-**
**Appellants.**

**No. 71–1885**
**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1972.

Benjamin W. Yancey, Rufus C. Harris, Jr., Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for defendants-appellants.

Neal D. Hobson, Milling, Saal, Benson, Woodward & Hillyer, New Orleans, La., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

[*] Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

GEWIN, Circuit Judge:

The SS EGERO and her owner, Skjelbreds Rederi A/S, appeal from a judgment finding that the plaintiff, J. Ray McDermott & Co. (McDermott) is entitled to recover as an element of provable damages certain "standby" and "delay" expenses incurred in connection with an anchoring incident in the Mississippi River. Pursuant to a consent judgment on liability the parties stipulated that McDermott would recover 60% of its provable damages and the EGERO would recover 40% of its provable damages. A commissioner was appointed to determine what part of McDermott's claim should be regarded as provable damages. The Commissioner found for McDermott on all items claimed and his report was confirmed by the district court. We affirm.

The Commissioner found that McDermott, and its wholly owned subsidiary, Associated Pipe Line Contractors, Inc. (Associated), as joint-venturers, prepared and submitted a bid for a contract to construct for Texaco, Inc. dual twenty-two inch gas pipelines under and across the Mississippi River. McDermott and Associated were to share profits, costs, and risks with each company supplying equipment, labor and supervision for the project. On August 10, 1965, McDermott contracted with Texaco to construct these pipelines. On September 1, 1965, McDermott entered into a subcontract with Williams-McWilliams Industries, Inc. (McWilliams) for all the hydraulic excavation work, including the back-filling of the pipeline trench in the bed of the river, required to fulfill the prime contract with Texaco. The subcontract provided for seven days standby time between the dredging and the backfilling, during which the pipelines would be laid. The subcontract also provided that McDermott would pay McWilliams $4,000.00 per day (less 5% discount) for standby time in excess of the seven days.

By October 19, 1965, the excavation of the trench in the river bed had been completed. One pipeline had been pulled across the river and preparations were being made by Associated to place the second pipeline in the trench. About 1:00 p. m. on October 19, 1965, the S/S EGERO dropped her anchor on or near the pipeline which was already in place. Because of the concern that the anchor may have fallen upon or become entangled with the pipeline special precautions were taken to see that the anchor could be raised without endangering the pipeline. Consequently it was not until 11:00 a. m. on October 20, 1965, that Associated was able to resume pulling the second pipeline into place. McDermott, under an assignment of Associated's claim for this interference with operations and the resulting 10 hour shutdown, asserted that it had suffered provable damages of $7,560.80.

McDermott additionally claimed as provable damages $38,633.35 which it paid to McWilliams for 10.16667 days that McWilliams' equipment stood by waiting to backfill the trench, over and above the seven days standby time provided for in the subcontract. During this time Associated and McDermott undertook the testing required to satisfy Texaco that the line was not damaged. Thereafter the line was accepted by Texaco and the backfilling completed by McWilliams.

The EGERO contends that the Commissioner and the district court erred in finding these two items were part of McDermott's provable damages. The EGERO argues that these damages arise from unintentional interference with contractual relations between McDermott and McWilliams and are therefore not actionable under Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); and Agwilines, Inc. v. Eagle Oil & Shipping Co., Ltd., 153 F.2d 869 (2d Cir. 1946). Alternately the EGERO argues that the damages were not proximately caused by its negligence and that the damages are too remote and unforeseeable.

The Commissioner's report as confirmed by the district court found McDermott's claimed damages for the delay and standby were direct and foreseeable consequences of the incident. After a review of the briefs and record in this case we conclude that the Commissioner and the district court were not clearly erroneous in this regard.

The EGERO's reliance upon *Robins* and *Agwilines* misapprehends the factual distinctions in the present suit from those cases. In *Robins* the Supreme Court held that where a ship had been placed in dry dock for repairs by the shipowner, and the repairs had been delayed due to the negligence of the dry dock, the time charterer of the ship had no cause of action against the dry dock for the profits which the charterer might have earned from the use of the ship during the delay. The owner of the vessel had compromised its claim against the shipyard. The Court indicated that the charterer had been damaged solely as a consequence of the dry dock's unintentional interference with the charterer's contract with the owner whose ship had been damaged. Hence the Court held the charterer had no claim against the dry dock either in tort or contract.

*Robins* does not stand for the proposition that no one may recover damages suffered or liabilities incurred by virtue of a contract when a ship is tortiously detained. Certainly the shipowner may recover all damages proximately caused by another's tortious conduct with respect to his ship. The Baltimore, 75 U. S. 377, 8 Wall. 377, 19 L.Ed. 463 (1869); Tug JUNE S v. Bordagain Shipping Co., 418 F.2d 306 (5th Cir. 1969).

In *Agwilines* the shipowner was permitted to recover his loss of profits under a charter contract as damages resulting from a collision with another ship. But the court limited the owner to his actual loss. The time charterer was obligated under the contract to pay and had paid the shipowner half hire during the repair period. However, the shipowner sought to recover the full hire price during the delay as damages under the theories that a tortfeasor is barred to assert partial indemnification, or alternatively, that the shipowner should be permitted to sue for the charterer's loss. Judge Learned Hand rejected the shipowner's claim for the half hire already paid by the charterer. In the first instance the Court noted, the shipowner had suffered no loss from the detention except for the loss of the half hire. Secondly, the shipowner was barred from asserting a claim for the charterer's loss by the Supreme Court's decision in *Robins* that in such circumstances the charterer had suffered no legal wrong.

The present case is not a suit by McWilliams for the lost profits which it might have earned from the use of the dredges had they not been detained by the delay in the backfilling. To such a suit *Robins* would squarely apply. The case at bar is a suit by the "owner" of the pipeline project seeking reimbursement of expenses incurred under its subcontract when the project was delayed.

■ The Commissioner and the district court found that the $38,633.35 paid to McWilliams was a loss arising from the incident which McDermott was contractually obligated to pay. The court found that the "Force Majeure" clause in the prime contract did not suspend McDermott's obligation to McWilliams under the subcontract. The court also found that as joint venturer with McDermott, Associated had sufficient proprietary interest in the pipeline project to avoid the rule of *Robins* and to render the $7,560.80 expenses for the delay a direct and proximate loss. The court's findings are supported by the evidence, are not clearly erroneous and reflect no error in the application of the law. The judgment is affirmed.