**ARNOLD M. DIAMOND, INC., Plaintiff,**

v.

**GULF COAST TRAILING CO., Gulf Coast Trailing Co., Inc., Dredge Ouachita and Dredge Mermentau, Defendants.**

**GULF COAST TRAILING CO.,**
**Defendant/Third–Party**
**Plaintiff,**

v.

**TWIN CITY SHIPYARD, Collins Electrical Inc. and The Rexroth Corporation, Third–Party Defendants.**

No. Civ. 87–4914(GEB).

United States District Court,
D. New Jersey.

Sept. 11, 1997.

Carol L. Knowlton, Teich, Groh & Frost, Trenton, NJ, Thomas A. Martin, Putney, Twombly, Hall & Hirson, Iselin, NJ, for Arnold M. Diamond, Inc.

Carol N. Lambos, Lambos & Junge, New York, NY, for Gulf Coast Trailing Co. and Gulf Coast Trailing Co., Inc.

Jeffrey S. Clark, Tomlin, Clark and Hopkin, Haddonfield, NJ, for Twin City Shipyard, Inc.

Edward Bruce Deutsch, McElroy, Deutsch & Mulvaney, Morristown, NJ, for Collins Electrical.

Robert M. Vinci, Shanley & Fisher, Morristown, NJ, for Rexroth Corp.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on: (1) the motions of Gulf Coast Trailing, Co., Collins Electrical, Inc., and The Rexroth Corporation for summary judgment pursuant to FED. R. CIV. P. 56; (2) the cross-motion of Twin City Shipyard for summary judgment pursuant to FED. R. CIV. P. 56; and (3) the motion of plaintiff Arnold M. Diamond Inc. to amend its complaint pursuant to FED. R. CIV. P.15. For the reasons set forth in this Memorandum Opinion, the Court will: (1) grant defendants Gulf Coast Trailing, Co. and Collins Electrical, Inc.'s motions for summary judgment; (2) deny The Rexroth Corporation's motion for summary judgment as moot; (3) grant defendant Twin City Shipyard's cross-motion for summary judgment; and (4) deny as moot plaintiff Arnold M. Diamond Inc.'s motion to amend its complaint.

## I. BACKGROUND

Plaintiff Arnold M. Diamond, Inc. (hereinafter "Diamond") is a privately-owned construction company. From 1985 to 1987, Diamond was acting as a general contractor performing under contract with the United States Navy to undertake certain improvements to Pier No. 2 and its appurtenances located at the United States Naval Station in Earle, New Jersey (hereinafter "the pier"). The work was to include the installation of new rubber fenders along the sides of the existing pier as well as the construction of several new mooring platforms which were to extend the length of the pier. Pursuant to a contract with the United States Army Corps of Engineers, defendant Gulf Coast Trailing Co. (hereinafter "Gulf Coast") was responsible for conducting dredging operations in and around the pier and the mooring platforms.

At 12:15 a.m. on March 16, 1986, the dredge Mermentau, owned and operated by Gulf Coast, allided [1] with the east side of the pier. The Mermentau is a self-propelled suction dredge of 197 feet in overall length which was performing dredging operations in accordance with Gulf Coast's contract with the Army Corps of Engineers. The starboard bow of the Mermentau collided with the scaffolding which extended six to ten feet out from the pier into the channel and an "A" fender (bumper) bolted to the pier. Later that same day, at 9:35 a.m., another Gulf Coast dredge, the Ouachita, collided with Mooring Platform B, an appurtenance extending from the pier's west side. The Ouachita's port side collided with some construction materials attached to the pier.

In December 1986, Gulf Coast brought an action against Twin City Shipyard and Collins Electrical Inc. in the United States District Court for the Eastern District of Louisiana. That action sought indemnity and/or contribution for any potential liability that might be assessed against Gulf Coast from the allisions involving the dredge Ouachita

---

1. An allision is a collision between a moving vessel and a stationary object. *See* 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 14–2 at 254 n. 1 (2d ed.1994).

and the pier.[2]  On or about November 30, 1987, that action, *Gulf Coast Trailing Co. v. Twin City Shipyard and Collins Electrical, Inc.*, Civ. No. 87–4914(GEB), was transferred to this Court.  On January 22, 1988, the parties voluntarily stipulated to dismiss the action without prejudice.  On or about March 10, 1988, *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co, et al.*, Civ. No. 88–1219(AET), was filed in this Court in which Diamond sought recovery for the damages it allegedly incurred due to the two separate allisions involving the dredges Ouachita and Mermentau.  On July 18, 1988, the parties to *Gulf Coast Trailing Co. v. Twin City Shipyard and Collins Electrical, Inc.*, Civ. No. 87–4914(GEB), stipulated to reinstate the action as an active matter and consolidate it with *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co, et al.*, Civ. No. 88–1219(AET) under case number 87–4914(GEB).  On January 31, 1989, a consent order was entered by this Court staying the above-captioned matter pending the resolution of the bankruptcy proceedings of Perth Amboy Iron Works, Inc. The action remained stayed until January 25, 1996, when this Court entered an Order reinstating the matter.  On July 8, 1997, a consent order was entered by this Court dismissing all claims, cross-claims and counterclaims by and against defendant Rexroth Corporation.[3]

## II.  DISCUSSION

### A.  Standards For Summary Judgment

Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  In a summary judgment motion, the non-moving party receives the benefit of all reasonable doubts and any inferences drawn from the underlying facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  If the non-moving party bears the burden of proof at trial as to a dispositive issue, Rule 56(e) requires him to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553;  *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990).  Issues of material fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[4]

Defendants contend that the *Robins Dry Dock*[5] doctrine prohibits plaintiff from recovering damages from Gulf Coast.[6]  In *Robins*, a time charterer of a vessel sued for profits lost when the defendant dry dock negligently damaged the vessel's propeller.  The propeller had to be replaced, thus extending by two weeks the time the vessel was laid up in dry dock, and it was for the loss of the use of the vessel for that period that the charterer sued.  In denying recovery, Justice Holmes noted that:

---

2.  The Ouachita was a new dredge built by third-party defendant Twin City Shipyard who had delivered the dredge to Gulf Coast approximately three months prior to the allision.  Third-party defendant Collins Electrical Inc. was a subcontractor of Twin City Shipyards which provided the wiring for the Ouachita's clutch system.

3.  Consequently, Rexroth's motion for summary judgment will be denied as moot.

4.  Both parties agree that federal maritime law is to be applied to the case at bar as the allisions occurred on navigable waters and there is a substantial relationship between the incidents involved in this litigation and traditional maritime activity, namely that the barges were engaged in commercial activity performing maintenance work for a navigable waterway.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).  Under the Admiralty Extension Act, this Court's maritime jurisdiction extends to claims for shore-side damages as well as those directly involving a waterway.

5.  *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).

6.  Plaintiff contends that this cases involves both a claim for repair/replacement costs paid by Diamond to repair its uncompleted construction work in process and claims for economic loss based upon the delay associated with the property damage.  *See* Affidavit of Bruce M. Diamond (hereinafter "Diamond Aff.") ¶ 16.

[N]o authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong.... The law does not spread its protection so far.

*Robins Dry Dock,* 275 U.S. at 309, 48 S.Ct. at 135. The Court found that the time charterer had no property interest in the vessel, and that, unlike a demise charterer, the time charterer did not even have "possession" of the vessel. *Id.* at 308, 48 S.Ct. at 135. Consequently, the Court held that if the claimants had a legally protected interest in the nonnegligent repair of the vessel's propeller, "it must be worked out through their contract relations with the owners." *Id.*

Many courts have read *Robins Dry Dock* to establish a bright line against recovery for economic loss caused by an unintentional maritime tort absent physical damage to property. *See, e.g., Getty Refining & Mktg. Co. v. MT FADI B,* 766 F.2d 829 (3d Cir. 1985); *Louisiana v. M/V Testbank,* 752 F.2d 1019 (5th Cir.1985), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Holt Hauling & Warehousing Sys., Inc. v. M/V Ming Joy,* 614 F.Supp. 890, 896 (E.D.Pa.1985) ("The standard formulation of the *Robins Dry Dock* rule is that 'physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional maritime tort.' "). The *Robins Dry Dock* rule has been most commonly applied where a facility used for commerce or transportation has been negligently damaged, thereby harming all those who would have used the facility during the time it undergoes repair. *See, e.g., Getty Refining,* 766 F.2d 829. Adjudicating economic loss claims in these types of cases would require expensive and duplicative litigation after every collision involving a frequently used facility. The *Robins Dry Dock* doctrine serves to limit the pool of potential plaintiffs to those with the strongest interests in the "thing damaged." *See IMTT–Gretna v. Robert E. Lee SS,* 993 F.2d 1193, 1194 (5th Cir.1993) (noting that this policy was adopted in order to prevent numerous claims of economic damage from parties the tortfeasor did not know he owed any duty to), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). Consequently, the *Robins Dry Dock* doctrine discards "traditional tort precepts of foreseeability and lack of remoteness in this limited class of cases." *Getty Refining,* 766 F.2d at 832. Read in this manner, *Robins Dry Dock* places certain plaintiffs "outside the scope of those to whom [the] defendant owes a legal duty of care." *See Barber Lines A/S v. M/V Donau Maru,* 764 F.2d 50, 56 (1st Cir.1985). Despite stiff criticism, the principle announced by Justice Holmes has survived to this day.

■ In *Getty Refining & Mktg. Co. v. MT FADI B,* 766 F.2d 829 (3d Cir.1985), the Third Circuit applied the *Robins Dry Dock* doctrine holding that:

the rule under discussion [the *Robins Dry Dock* doctrine] applies when the plaintiff suffers only pecuniary loss such as the claim here. Clearly, a plaintiff may recover for negligence that results in physical harm to his person or land or chattels and causes pecuniary loss because of the nonperformance of a contract with him. Under those circumstance, the physical injury forms the basis of a tort independent of any contractual interests and recovery is subject to the usual rules governing liability for negligence. Accordingly, we will adhere to the rule defined by Justice Holmes in *Robins,* incorporated in the Restatement of Torts (Second) § 766C, and embraced by the leading commentators that where the negligence does not result in physical harm, thereby providing no basis for an independent tort, and the plaintiff suffers only pecuniary loss, he may not recover for the loss of the financial benefits of a contract or prospective trade.

*Id.* at 833. In other words, only a plaintiff suffering physical harm to his person, land or chattels may sue for negligent interference with contractual interests. *See, e.g., Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465, 1473 (5th Cir.1991) (finding that the "rule of *Robins Dry Dock* was never intended to apply to cases in which the plaintiff has suffered some physical damage to

property in which he has a proprietary interest. ").

■ Defendants argue that since Diamond did not have a proprietary interest in the damaged property, plaintiff's claims for economic loss are barred by the *Robins Dry Dock* doctrine. Plaintiff, however, contends that since it did have a proprietary interest in the damaged property, the exception to the *Robins Dry Dock* rule is applicable, and thus, its claims for economic loss are not barred. The issue in this case thus turns on whether plaintiff had a "proprietary interest" in the damaged property at the time of the alleged tort.

Plaintiff maintains that it had possession and control of the pier and the improvements while under construction and was contractually responsibility for maintaining and repairing the pier prior to acceptance of the project by the Navy. *See* Diamond Aff. Exh. 4. Diamond argues that like a demise charterer, plaintiff stands in the shoes of the Navy for purposes of controlling access to the improvements. Plaintiff thus contends that as Diamond was contractually required to repair the damaged construction work, maintain control and possession of the project, and pay for costs of the repair and replacement work, it is the party with the "strongest interest in the thing damaged." Therefore, Diamond argues, the exception to the *Robins Dry Dock* doctrine is applicable, and plaintiff's claim for economic loss is not barred.

The term "proprietary interest" has been defined to mean "that a party must have control over the property tantamount to full ownership." *See Naviera Maersk Espana, S.A. v. Cho–Me Towing, Inc.*, 782 F.Supp. 317, 320 (E.D.La.1992) (citing *Testbank*, 752 F.2d at 1024). In *Louisiana v. M/V Testbank*, 752 F.2d 1019 (5th Cir.1985), which the Third Circuit relied upon heavily in the *Getty Refining* opinion, the court stated that:

> In *Vicksburg Towing Co. v. Mississippi Marine Transport Co.*, 609 F.2d 176 (5th Cir.1980) (Politz, J.), we [the Fifth Circuit] sustained recovery by an owner of a dock leased to another for damages to the dock caused by defendant's negligence. We asserted that the distinction between recovery by an owner when his property was

damaged and recovery by others ... was "meaningful, real and dispositive." *Testbank*, 752 F.2d at 1024. One court has noted that the type of proprietary interest that falls outside the rule and justifies recovery depends not on formalistic state law property doctrines but on a functional analysis of whether the claimant had possession and sufficient control of the property. *See Holt Hauling*, 614 F.Supp. at 898. "Owners ... may be absentees, having little to do with the day-to-day management of their property. Consequently, some other party, having a stronger possessory interest and more closely involved in ordinary management and maintenance of the property, may be better able to protect the property by promptly discovering damage, identifying those responsible, and bringing suit against them." *See id.; see also IMTT–Gretna*, 993 F.2d at 1193 (noting that the Fifth Circuit has found that the requirements for proprietary interest include actual possession and control, responsibility for repair, and responsibility for maintenance).

In the matter at hand, plaintiff has failed to demonstrate that it had a proprietary interest in the damaged property such that the *Robins Dry Dock* exception should apply. Bruce M. Diamond, the president of plaintiff Arnold M. Diamond, Inc. states in paragraph 7 of his affidavit that "The work that was damaged by Gulf Coast's vessels had been installed for several months. Diamond had received payment by the Navy for the work and had paid PAI [one of plaintiff's subcontractors]." *See* Diamond Aff. ¶ 7. Section 7(d) of plaintiff's contract with the Navy states that:

> All material and work covered by progress payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work, or as waiving the right of the Government to require the fulfillment of all the terms of the contract.

*See* Diamond Aff. Exh. 4. The contract clause appears to clearly negate Diamond's

argument that it had a proprietary interest in the damaged property. The clause clearly states that after progress payments are made, the Government is the sole owner of the property. Bruce Diamond's affidavit indicates that since the Navy paid for the work prior to the allisions, the Navy was the sole owner of the work product. Thus, under the *Getty Refining* and *Testbank* analysis, since plaintiff was not the "owner" of the damaged property, it is barred from recovering for economic loss under the *Robins Dry Dock* rule.

Plaintiff alternatively contends that it had "functional control and possession" over the damaged property since, pursuant to its agreement with the Navy, plaintiff was responsible for maintenance and repairs prior to the Navy's acceptance of the project. However, in the matter at hand, such responsibility is insufficient to create a proprietary interest. The Navy never relinquished control of the pier to plaintiff, even though Diamond was under contract to undertake improvements to it. In *IMTT–Gretna v. Robert E. Lee SS*, 993 F.2d 1193 (5th Cir. 1993), the Fifth Circuit affirmed a grant of summary judgment to a defendant vessel owner sued for economic damages by a lessee of a pier berth because it was unable to use the berth as a result of the vessel's collision with the dock facility. In citing the *Robins Dry Dock* doctrine, the court found that the lessee failed to meet any of the criteria for a proprietary interest since it did not own any of the property, the dock owners could refuse the lessee access to the docks, the lessee's use of the dock was valid only for the term of the lease, and the lessee did not have the responsibility to repair the damage. *See id.* at 1194. In the case at bar, while plaintiff was responsible for repairs, plaintiff did not own the dock or the damaged improvements, the Navy could restrict plaintiff's use of the dock, and plaintiff's use of the dock was only valid until the improvements were completed. *See* Deposition of Stephen H. Brix[7] at 362 ("At Pier 2, the government had total control of the pier and the surrounding vicinity. The government controlled who came in, who came out both from the land and from the water.").[8] Consequently, based upon the facts presented, plaintiff has failed to establish that it had a proprietary interest in the property.[9]

Moreover, plaintiff's argument that as a general contractor it was in sufficient "possession and control" of the property to create a proprietary interest is unavailing. Plaintiff relies upon the Fifth Circuit decision of *J. Ray McDermott & Co. v. S.S. Egero*, 453 F.2d 1202 (5th Cir.1972), for this proposition. In *S.S. Egero*, a pipeline contractor was permitted to recover for reimbursement of expenses incurred as a result of standby time incurred in excess of its contractual agreement with its subcontractor in connection with an anchoring incident that damaged a pipeline under construction. The court found that the builder of the pipeline (the general contractor) was the "owner" for purposes of asserting claims for damages caused by the shipping incident since it had not received payment or transferred actual title.

---

7. Brix was Diamond's project manager at the naval station project.

8. The only evidence to contradict this assertion is a self-serving statement by Bruce Diamond in his affidavit whereby he claims that "Diamond was in possession and control of the improvements." *See* Diamond Aff. ¶ 3. However, in his deposition, Diamond testified that he had never visited the job site at the pier. *See* Diamond Dep. at 147–48.

9. Plaintiff also appears to contend that since the Navy assigned its rights to Diamond, it now has a propriety interest such that it may maintain its suit against Gulf Coast. The settlement agreement between Diamond and the Navy states:

The Navy has and still contends that Diamond is the appropriate claimant against GCT [Gulf

Coast Trailing] for all work performed by Diamond which was damaged by GCT's operations. To the extent GCT claims that the Navy is the party to whom it must make payment for damages caused to Diamond, the Navy assigns to Diamond any rights to payment against GCT the Navy had or has for any Diamond costs or damages resulting from the damage caused to Diamond's work in process by GCT's dredges. Diamond Aff. Exh. 9 ¶ 3. However, as the Navy has no right of recovery for Diamond's alleged contractual and economic loss, the Navy could not have assigned a right to Diamond that it does not have. Moreover, plaintiff further argues that since the Navy designated it as the appropriate claimant against Gulf Coast, its claim is valid before this Court. However, Diamond may not circumvent the *Robins Dry Dock* doctrine via the Navy's pronouncements.

However, in the case at bar, as evidenced *supra*, plaintiff cannot be considered the "owner" of the damaged property as, pursuant to the construction contract, the Government was the "sole owner" of the property upon the making of the progress payment. Moreover, subsequent case law in the Fifth Circuit has limited the *S.S. Egero* decision. In *Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co.*, 877 F.2d 1214 (5th Cir.), *cert. denied*, 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 321 (1989), the court stated that:

> Even if we ignored the diminished importance of *S.S. Egero* in the context of the circuit's more recent and thorough examination of 'proprietary interest' in *Testbank*, the facial applicability of *S.S. Egero* to Marathon's [plaintiff's] claim is tenuous: Marathon was not in the process of constructing a pipeline when the damage occurred; instead, the pipeline, which was actually owned by TETCO, was already constructed and operating. Since *S.S. Egero* stands for the proposition that a builder under contract is the owner of what it is building until it receives payment and transfers actual title, it does not support Marathon's claim that the oil company was the functional owner of the 20-inch pipeline.

*Id.* at 1224. Consequently, this Court does not find the *S.S. Egero* decision to be persuasive.

As this Court finds that the *Robins Dry Dock* limitation of liability is applicable to the case at bar, plaintiff's claims against Gulf Coast associated with the property damage are barred.[10]

## III. CONCLUSION

For the foregoing reasons, the Court will: (1) grant defendants Gulf Coast Trailing, Co., and Collins Electrical, Inc.'s motions for summary judgment; (2) deny The Rexroth Corporation's motion for summary judgment as moot; (3) grant defendant Twin City Ship-

yard's cross-motion for summary judgment; and (4) deny as moot plaintiff Arnold M. Diamond Inc.'s motion to amend its complaint.

## ORDER

For the reasons set forth in the Memorandum Opinion filed in the above-captioned matter on this date;

IT IS on this day of September, 1997;

ORDERED that defendants Gulf Coast Trailing, Co. and Collins Electrical, Inc.'s motions for summary judgment be and hereby are GRANTED; and it is further

ORDERED that the defendant Twin City Shipyard's cross-motion for summary judgment be and hereby is GRANTED; and it is further

ORDERED that defendant The Rexroth Corporation's motion for summary judgment be and hereby is DENIED AS MOOT; and it is further

ORDERED that plaintiff Arnold M. Diamond Inc.'s motion to amend its complaint be and hereby is DENIED AS MOOT; and it is further

ORDERED that the above-captioned matter be and hereby is DISMISSED IN ITS ENTIRETY.

10. As such claims are barred, plaintiff's motion to amend its complaint to recover punitive damages against Gulf Coast will be denied at moot. Moreover, as the Robins Dry Dock doctrine prohibits Diamond from recovering damages from Gulf Coast, and Gulf Coast's claim against Twin City Shipyard is merely one for indemnification and/or contribution, Twin City Shipyard's cross-motion for summary judgment will be granted.