

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-1999

# Arnold M Diamond Inc v. Gulf Coast Trailing

Precedential or Non-Precedential:

Docket 97-5634

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Arnold M Diamond Inc v. Gulf Coast Trailing" (1999). *1999 Decisions.* Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 16, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5634

ARNOLD M. DIAMOND, INC.,
Appellant

v.

GULF COAST TRAILING CO., a Partnership; GULF COAST
TRAILING COMPANY, INC.; DREDGE OUACHITA,
Her Engines, Boilers, Etc.; DREDGE MERMENTAU, Her
Engines, Boilers, Etc.

GULF COAST TRAILING CO.
Defendant/Third-Party Plaintiff

v.

TWIN CITY SHIPYARD; COLLINS ELECTRICAL, INC.;
THE REXROTH CORPORATION, INC.
Third-Party Defendants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Nos. 87-cv-04914 & 88-cv-01219)
(District Judge: Honorable Garrett E. Brown, Jr.)

Argued: January 13, 1999

Before: NYGAARD, ALITO, and LEWIS, Circuit Judges

(Opinion Filed: June 16, 1999)

DOUGLAS L. PATIN (ARGUED)
ANDREW BRAMNICK
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005

Counsel for Appellant

PETER A. JUNGE (ARGUED)
CAROL N. LAMBOS
LAMBOS & JUNGE
29 Broadway, Ninth Floor
New York, New York 10006-3101

Counsel for Appellees
Gulf Coast Trailing Co. and
Gulf Coast Trailing Company, Inc.

JEFFREY S. CLARK
TOMLIN, CLARK, HOPKIN &
 MONTEMURRO
20 East Redman Avenue
Haddonfield, New Jersey 08033

Counsel for Appellee
Twin City Shipyard

JOHN W. MORRIS
McELROY, DEUTSCH & MULVANEY
1300 Mount Kemble Avenue
Morristown, NJ 07962

Counsel for Appellee
Collins Electrical, Inc.

OPINION OF THE COURT

ALITO, Circuit Judge:

I.

Arnold M. Diamond, Inc. ("Diamond") appeals the District Court's grant of summary judgment in favor of Gulf Coast Trailing Co. ("Gulf Coast"), Twin City Shipyard, and Collins

Electrical, Inc. ("Collins"). The District Court held, among other things, that the United States Navy did not assign to Diamond its right to sue Gulf Coast for damages arising from allisions[1] between Gulf Coast ships and a Navy-owned pier. We disagree and reverse the District Court's grant of summary judgment on this basis.

II.

Diamond, a privately-owned construction company, entered into a contract with the United States Navy to make improvements to Pier No. 2 ("the pier") at the Earle Naval Weapons Station in Colts Neck, New Jersey. The contract provided that Diamond would, among other things, install new rubber bumpers and construct new mooring platforms to extend the length of the pier. It also provided that the Navy would make at least monthly progress payments to Diamond and that all work covered by such payments would become the "sole property" of the Navy. See JA at 605-606. These payments, however, did not relieve Diamond from repairing work damaged prior to final completion and acceptance by the Navy. See JA at 601, 606.

Gulf Coast, pursuant to a contract with the United States Army Corps of Engineers, conducted dredging operations around the pier. On March 16, 1986, two dredging ships that were owned and operated by Gulf Coast allided with the pier, causing damage to the bumpers and the mooring platforms. One of the dredges, the Ouachita, was built by Twin City Shipyard, which had employed Collins as a subcontractor for the wiring of the ship's clutch system.

Following the allisions, the Navy required Diamond, under threat of terminating the contract for default, to repair the damage caused by the allisions, see JA at 608-10, even though the Navy acknowledged that Gulf Coast had caused the damage to the pier, see JA at 607-08, 614-15, and that Diamond was the appropriate claimant in tort

_____

1. This Court has defined an allision as a collision "between a ship and a stationary object." See AT&T v. M/V Cape Fear, 967 F.2d 864, 873 (3d Cir. 1992).

3

against Gulf Coast. See JA at 611, 616. Indeed, the Navy communicated its position to Gulf Coast via correspondence, dated October 28, 1986. See JA at 611. Gulf Coast -- presumably in anticipation of Diamond's potential lawsuit -- commenced an action for indemnity or contribution against Twin City Shipyard and Collins.

Diamond subsequently sued Gulf Coast in the United States District Court for the District of New Jersey for damages it allegedly sustained as a result of the two allisions. The damages alleged included the costs paid by Diamond to repair its work in progress and the costs associated with the delay in the overall completion of the remaining portions of the project. See JA at 599. Gulf Coast's indemnity or contribution action was then consolidated with Diamond's lawsuit.

In a separate action, Diamond took an appeal to the Armed Services Board of Contract Appeals ("ASBCA") regarding the Navy's denial of its contract claim for additional compensation to cover its repair work. See JA at 614. Before the ASBCA made its decision, however, Diamond and the Navy reached a settlement agreement. That settlement agreement contained the following assignment clause:

> The Navy has and still contends that Diamond is the appropriate claimant against [Gulf Coast] for all work performed by Diamond which was damaged by [Gulf Coast's] operations. To the extent [Gulf Coast] claims that the Navy is the party to whom it must make payment for damages caused to Diamond, the Navy assigns to Diamond any rights to payment against [Gulf Coast] the Navy had or has for any Diamond costs or damages resulting from the damage caused to Diamond's work in process [sic] by [Gulf Coast's] dredges.

JA at 616.

In the District Court action, Gulf Coast, Twin City Shipyard, and Collins filed motions for summary judgment, contending that the rule announced by the Supreme Court in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927), precluded Diamond from recovering damages from

4

Gulf Coast. The District Court held that the Robins Dry Dock rule applied to the facts of this case and granted summary judgment in favor of the defendants. In reaching its decision, the Court held that the assignment clause in the settlement agreement between Diamond and the Navy did not transfer to Diamond the Navy's right to sue Gulf Coast for damages caused by the allisions. See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 979 F. Supp. 301, 306 n.9 (D.N.J. 1997). The Court reached this conclusion for two reasons. First, the Court reasoned that because "the Navy ha[d] no right of recovery for Diamond's alleged contractual and economic loss, the Navy could not have assigned a right to Diamond that it d[id] not have." Arnold M. Diamond, 979 F. Supp. at 306 n.9. Second, the Court concluded that "Diamond [could] not circumvent the Robins Dry Dock doctrine" simply because "the Navy designated it as the appropriate claimant against Gulf Coast[.]" Id. Diamond then took this appeal.

III.

On appeal, Diamond argues, among other things, that the District Court erred in granting summary judgment in favor of Gulf Coast on the assignment clause issue. We review an order granting summary judgment de novo, and we evaluate the evidence in the light most favorable to the nonmoving party. Antol v. Perry, 82 F.3d 1291, 1294–95 (3d Cir. 1996). When the meaning of contract language is at issue, we affirm a grant of summary judgment only if the contract language is unambiguous and the moving party is entitled to judgment as a matter of law. See, e.g., Newport Assocs. Dev. Co. v. Travelers Indem. Co., 162 F.3d 789, 791 (3d Cir. 1998); Tamarind Resort Assocs. v. Government of Virgin Islands, 138 F.3d 107, 111 (3d Cir. 1998). Whether a contract is ambiguous is a legal question subject to plenary review. Newport Assocs., 162 F.3d at 792; Sumitomo Mach. Corp. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir. 1996). To affirm a grant of summary judgment on an issue of contract interpretation, we must conclude that the contractual language is subject to only one reasonable interpretation. Tamarind Resort, 138 F.3d at 110–11; Sumitomo Mach., 81 F.3d at 332; Pennbarr Corp. v.

Insurance Co. of N. Am., 976 F.2d 145, 149 (3d Cir. 1992). The question on appeal, therefore, is whether Diamond has provided a reasonable alternative reading of the contract under which the defendants would not be entitled to judgment as a matter of law.

Diamond contends that "the Navy assigned to Diamond `any rights to payment against [Gulf Coast] the Navy had or has for any Diamond costs or damages resulting from the damage caused to Diamond's work in process [sic] by [Gulf Coast's] dredges.' " Appellant's Br. at 20 (quoting JA 616). Diamond argues that the "assignment entitled Diamond to assert the Navy's rights, as `owner' of the damaged property, to recover the repair costs and other damages." Id. Applying general principles of contract interpretation,2 we hold that Diamond's interpretation is, at a minimum, a reasonable alternative to that accepted by the District Court and that therefore the Court erred in granting summary judgment for Gulf Coast.

_____

2. Neither the District Court nor the parties addressed the issue of the body of law to apply in interpreting the assignment clause of the settlement agreement. That agreement itself does not contain a choice-of-law provision, and the record does not include a complete version of the construction contract between the Navy and Diamond, and thus we are unable to determine with certainty whether that contract possesses a choice-of-law clause.

The Supreme Court has held that "[i]t is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law." Priebe & Sons, Inc. v. United States, 332 U.S. 407, 411 (1947) (citing United States v. Standard Rice Co., 323 U.S. 106, 111 (1944)). See also Boyle v. United Techs. Corp., 487 U.S. 500, 504-05 (1988) ("We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law."); United States v. Allegheny County, Pa., 322 U.S. 174, 183 (1944) ("The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state."). Because the parties in this appeal have not argued that Congress has adopted a different standard for contracts between the Navy and independent contractors, we will apply "principles of general contract law."

6

Under general principles of contract law, "the purpose of interpretation is to become aware of the `intention of the parties.' " 3 Arthur L. Corbin, Corbin on Contracts, S 538, at 55 (1960). "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts S 203 (1981). When interpreting a contract, a court may consider extrinsic evidence of surrounding circumstances to ascertain the intended meaning of the parties. Corbin, supra, SS 542, at 100-04, 579, at 414-25; Restatement (Second) of Contracts S 214 cmt. b.

In this case, the District Court rejected Diamond's interpretation of the assignment clause because the Court read this clause as an attempt by the parties to assign a "right of recovery for Diamond's alleged contractual and economic loss," which, as the District Court also noted, is not a right that the Navy possessed. In effect, the District Court's interpretation rendered the assignment clause a nullity. We hold, however, that the assignment clause may reasonably be interpreted as assigning to Diamond the Navy's right to payment against Gulf Coast. This right to payment includes damages caused by Gulf Coast's dredges to Diamond's work in progress. The Navy, as the owner of Diamond's work in progress,[3] had the right to sue Gulf Coast for damages arising from the allisions between Gulf Coast's ships and the pier. Thus, this interpretation does not assign a right to recovery to Diamond that the Navy did not possess and, unlike the District Court's interpretation, does not render the clause "unreasonable" or "of no effect." Furthermore, in light of the language in the assignment clause indicating that the Navy believed that Diamond was the appropriate claimant against Gulf Coast,[4] as well as extrinsic evidence to that effect,[5] this interpretation takes account of the "intention of the parties."

_____

3. Neither Diamond nor the appellees dispute that the Navy owned the damaged improvements to the pier. See Appellant's Br. at 11-12; Gulf Coast's Br. at 30; Twin City Shipyard's Br. at 7; Collins's Br. at 7.
4. "The Navy has and still contends that Diamond is the appropriate claimant against [Gulf Coast] for all work performed by Diamond which was damaged by [Gulf Coast's] operations." JA 616.
5. See JA 611 (correspondence from the Navy to counsel for Gulf Coast, dated October 28, 1986) ("Diamond is the appropriate claimant against

Gulf Coast argues that the assignment clause "has no relevance to this dispute." Gulf Coast's Br. at 17. As noted, the assignment clause provides in pertinent part:"To the extent [Gulf Coast] claims that the Navy is the party to whom it must make payment for damages caused to Diamond, the Navy assigns to Diamond any rights to payment against [Gulf Coast] . . . ." JA 616. Relying on this language, Gulf Coast argues that the assignment clause was ineffective because Gulf Coast "is not claiming that the Navy is the party to whom it must make payment for damages allegedly suffered by [Diamond.]" Gulf Coast's Br. at 17. See also Twin City Shipyard's Br. at 14–15. We are not persuaded that the grant of summary judgment for the defendants can be sustained on this ground.

The settlement agreement states that both the Navy and Diamond were aware of Diamond's lawsuit against Gulf Coast, see JA at 614–15, and, as already noted, that the Navy believed that Diamond was the appropriate claimant against Gulf Coast. See JA at 616. When the contract is interpreted in its entirety, together with the attendant circumstances of the parties, the language at issue may reasonably be interpreted to mean that the Navy assigned to Diamond its right to recovery for damages to the extent that Gulf Coast claimed that the Navy, as opposed to Diamond, was the appropriate claimant. Although Gulf Coast contends that it never claimed that the Navy was the party to whom it must make payment for damages arising from the allisions, its contention is belied by its argument that Robins Dry Dock precludes Diamond from recovering damages against it in tort. In making this argument, Gulf Coast maintained that the Navy was the owner of Diamond's work in progress. See id. at 30–31; see also Twin City Shipyard's Br. at 7; Collins's Br. at 11. It is undisputed that the Navy, as the owner of the damaged pier, had a right to sue in tort for injury to its property and thus was

_____

Gulf Coast for all work performed by Diamond which was damaged by Gulf Coast's operations."); JA 607 (correspondence from the Navy to Diamond, dated May 15, 1986) ("The issue of the damage to your work and the subsequent delay is a matter between you and Gulf Coast Trailing Company.").

an appropriate claimant against Gulf Coast. See Getty Ref. & Mktg. Co. v. MT Fadi B, 766 F.2d 829, 833 (3d Cir. 1985) (observing that the Robins Dry Dock doctrine would not bar a plaintiff from recovering for "negligence that results in physical harm to his person or land or chattels" because "the physical injury forms the basis of a tort independent of any contractual interests and recovery is subject to the usual rules governing liability and negligence"). Thus, Gulf Coast cannot now maintain that it never claimed that the Navy is the party to whom it must make payment for the damage its dredges inflicted upon Diamond's work in progress.

We now turn to the District Court's second reason for rejecting Diamond's argument that the Navy assigned to Diamond its right to sue Gulf Coast for the damaged pier, viz., the Navy's designation of Diamond as the appropriate claimant against Gulf Coast does not permit Diamond to circumvent the Robins Dry Dock doctrine. This Court has summarized the rule announced by the Supreme Court in Robins Dry Dock as follows: "[W]here the negligence does not result in physical harm, thereby providing no basis for an independent tort, and the plaintiff suffers only pecuniary loss, he may not recover for the loss of the financial benefits of a contract or prospective trade." Getty Ref., 766 F.2d at 833. In Robins Dry Dock, time charterers of a steamship sued for lost profits when the dock, which was performing maintenance on the ship, damaged the ship's propeller and caused the ship to be out of service for an additional two weeks. 275 U.S. at 307. Under the terms of the charter, the ship was to dock every six months, during which time the charterers' payments were suspended until the ship's servicing was completed. Id. The Court held that the charterers had no proprietary interest in the ship and that the charterers' loss was due solely to the lost benefit of the contract with the owners of the ship. Id . at 308–09. To the extent the charterers had any legally protected interest in the ship against unintended injuries, the Court held that "it must be worked out through their contract relations with the owners." Id. at 308.

In this case, the Navy and Diamond may have reached an agreement to assign the Navy's rights as owner of the pier

to Diamond for the purpose of recovering damages for the physical injury caused by Gulf Coast's dredges. If they did, Diamond did not -- as the District Court suggested-- attempt to "circumvent the Robins Dry Dock doctrine" by enforcing the assignment clause. Rather, in accordance with Robins Dry Dock, Diamond sought to protect its right of recovery through its contractual relations with the owner of the pier. We thus hold that summary judgment should not have been granted in favor of the defendants on the assignment clause issue.6 Since Diamond did not move for summary judgment, we do not reach the question whether Diamond would have been entitled to summary judgment.

As a final point, we note that the rights of an assignee can rise no higher than those of the assignor. See Corbin, supra, S 861, at 421-23; 3 Williston on Contracts, S 404, at 5 (3d ed. Jaeger ed. 1960). As applied to the instant appeal, this means that Diamond is foreclosed from recovering damages for economic losses related to the delay in the overall completion of the project. Instead, Diamond may recover only those damages to which the Navy was entitled, i.e., repair costs.

IV.

For the foregoing reasons, we reverse the District Court's grant of summary judgment in favor of the defendants and remand this case for further proceedings consistent with this opinion.

_____

6. We reject Diamond's alternative argument that Robins Dry Dock was not applicable because Diamond allegedly possessed a proprietary interest in the pier. Furthermore, we do not reach Diamond's equitable subrogation argument, which relies on Amoco Transport Co. v. S/S Mason Lykes, 768 F.2d 659, 668-69 (5th Cir. 1985). Diamond did not raise this argument below, nor did the District Court address it in its opinion. Although Diamond claims that it made this argument in its brief opposing Gulf Coast's motion for summary judgment, see Appellant's Br. at 2, our review of that brief convinces us that this argument was not fairly raised. Accordingly, we hold that Diamond has waived its equitable subrogation argument on appeal. See United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries, 150 F.3d 329, 334-35 (3d Cir. 1998).

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

11