

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-22-2006

# Flynn v. Health Advocate Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1815

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Flynn v. Health Advocate Inc" (2006). *2006 Decisions.* Paper 1551.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1551

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1815

KEVIN FLYNN; HEALTHCARE ADVOCATES, INC.,

Appellants

v.

HEALTH ADVOCATE, INC.; MICHAEL J. CARDILLO; ARTHUR
LIEBOWITZ; THOMAS A. MASCI, JR.; MARTIN B. ROSEN;
DAVIS S. ROCHINO; JOHN PEPPELMAN; GORDON CONWELL &
ASSOCIATES, INC.; NANCY CONWELL; NANCY CONWELL
PEPPELMAN; DAVID ROCCHINO

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-03764)
District Judge: Honorable Robert F. Kelly

Submitted Under Third Circuit LAR 34.1(a)
on January 12, 2006

Before: ROTH, FUENTES and ROSENN*, <u>Circuit Judges</u>.

(Filed February 22, 2006)

OPINION OF THE COURT

_____

* This case was submitted to the panel of Judges Roth, Fuentes and Rosenn. Judge
Rosenn died after submission, but before the filing of the opinion. The decision is filed
by a quorum of the panel. 28 U.S.C.§46(d).

**ROTH,** Circuit Judge:

Kevin Flynn and Healthcare Advocates, Inc., appeal The District Court's grant of summary judgment in favor of Health Advocate, Inc.[1] on Healthcare Advocates' claims of false designation of origin under the Lanham Act, 15 U.S.C. § 1125(A), common law trademark infringement, and unfair competition. We will affirm the judgment.

Because the facts of this case are familiar to the parties, we will summarize them. In 1996, Kevin Flynn formed the company Healthcare Advocates in order to provide advocacy services for healthcare patients. Beginning in 1998, Healthcare Advocates used the mark "HEALTHCARE ADVOCATES." Healthcare Advocates was not successful, however, in its efforts to register the mark with the United States Patent and Trademark Office.

Health Advocate, Inc., was formed in November 2001 and began using the mark "HEALTH ADVOCATE." It placed the meta tag "HEALTHCARE ADVOCATES" in Healthcare Advocates its website.[2]

In October 2004, Healthcare Advocates brought suit against Health Advocate, seeking injunctive relief and damages based on federal and common law trademark infringement and unfair competition. Healthcare Advocates claimed that Health Advocate's use of the term "HEALTHCARE ADVOCATES" infringed upon Healthcare Advocates' trademark and

---

[1]Appellees include Health Advocate, Inc., Michael J. Cardillo, Arthus Liebowitz, Thomas A. Masci, Jr., Martin B. Rosen, David S. Rochino, John Peppelman, Gordon Conwell & Associates, Inc., and Nancy Conwell Peppelman (collectively Health Advocate).

[2] Health Advocate removed the meta tag "Healthcare Advocates" from its website subsequent to the initial filing of this action in the district court.

2

formed the basis for Healthcare Advocates ' trademark and unfair competition claims. On February 8, 2005, the District Court issued an order granting Health Advocate's motion for summary judgment and dismissing without prejudice Healthcare Advocates' trademark and unfair competition claims.

The District Court had jurisdiction of this case under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291 and review *de novo* the District Court's grant of summary judgment, applying the same test the District Court employed. See Lucent Info. Mgmt., Inc. v. Lucent Tech. Inc., 186 F.3d 311, 315 (3d Cir. 1999). A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See FED. R. CIV. 56(c). In determining whether summary judgment was appropriate, the Court views the record and draws inferences in a light most favorable to the non-moving party. See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999).

To prove trademark infringement,[3] Healthcare Advocates must show that (1) the mark "HEALTHCARE ADVOCATES" is valid and legally protectable, (2) Healthcare Advocates

---

[3] As this Court has previously noted, "the test for common law trademark infringement and unfair competition is essentially the same test as the test for infringement and unfair competition under the Lanham Act" with the exception being that the goods need to have had an effect on interstate commerce to establish the federal claim. Fisons Horticulture, Inc., 30 F.3d 466, 472 (3d Cir. 1994). Thus, the analysis for the federal and common law trademark infringement and the unfair competition claims is virtually the same.

3

owns the mark, and (3) Health Advocate's use of a similar mark to identify its advocacy services is likely to create confusion concerning the origin of the goods or services. See Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466 (3d Cir. 1994). Where, as is here, the mark has not been federally registered and is not inherently distinctive, "validity depends on proof of secondary meaning." Id. Secondary meaning exists when the mark "is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." Commerce Nat'l Ins. Serv., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (D.N.J. 2003) (citing Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978). Furthermore, "a plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark." Id.

In determining the existence of secondary meaning, a court may consider the following non-exclusive list of factors: "(1) the extent of sales and advertising leading to buyer association;[4] (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion." Id. (citing Ford Motor Motor Co. v. Summit Motor Prod. Inc., 930 F.2d

_____

[4] Secondary meaning is generally "established through extensive advertising which creates in the minds of consumers an association between the mark and the provider of the services advertised under the mark." Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc., 214 F.3d 432, 438 (D.N.J. 2003) (citing Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978).

4

277, 292 (3d Cir. 1991)).

We agree with the District Court that Healthcare Advocates has failed to produce sufficient evidence from which we could reasonably conclude that Healthcare Advocates had established secondary meaning in the mark "HEALTHCARE ADVOCATES." Because the term HEALTHCARE ADVOCATES is descriptive in nature, *i.e.*, describes the advocacy service, we also agree that the evidentiary burden to establish secondary meaning is greater. See also 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15:28 (4th ed. 1997). Therefore, summary judgement was proper, given there was no genuine issue of material fact as to the mark's validity.

First, Healthcare Advocates' sales and advertising efforts did not rise to the level leading to buyer association. Healthcare Advocates' paid print advertising was limited to a few local newspapers and each advertisement ran no more than a dozen times from 1996 through 2001. Healthcare Advocates had no paid advertisements in trade magazines. Additionally, Healthcare Advocates failed to submit evidence showing the number of persons who visited the Healthcare Advocates website. Further, Flynn admitted that its paid advertising efforts were "ineffective."

Second, Healthcare Advocates failed to demonstrate that it made exclusive use of the mark "HEALTHCARE ADVOCATES." We agree that the descriptive nature of the mark and the widespread third-party use of the mark prior to November 2001 undermines a claim of exclusivity.

5

Third, Healthcare Advocates provided neither customer testimony, surveys, nor data relating to the size of its client base to sufficiently demonstrate secondary meaning of "HEALTHCARE ADVOCATES." We agree that customer thank you notes and a few affidavits[5] from former clients of Healthcare Advocates do not create a genuine issue for trial.

Fourth, we also agree that Healthcare Advocates' small size[6] and *de minimis* sales volume supports a finding of no secondary meaning regarding the mark at issue. Although Healthcare Advocates proffered tax records showing slightly higher sales from 1998 to 2001, much of those sales came from additional services unrelated to healthcare advocacy, including web site development services and data collection services. We further agree that the District Court correctly concluded that the tax records added little to the secondary meaning analysis.

Finally, Healthcare Advocates' evidence purporting to show actual confusion between the two companies was not sufficient to create a material issue of fact as to secondary meaning. Although Healthcare Advocates submitted a "call log" that recorded instances in which people telephoned Healthcare Advocates when they intended to call Health Advocate, these calls did not rise to the level of establishing secondary meaning. For the above reasons, we will affirm the District Court's grant of summary judgment in favor of Health Advocate.

---

[5] All three affidavits state: "I have come to associate the trademark "Healthcare Advocates" with the services that Healthcare Advocates provides."

[6] Flynn is the sole employee of Healthcare Advocates.

6