Robert WOODBURY, Plaintiff,

v.

**AMERICAN HOME PRODUCTS CORP., American Home Products Corp. Plan on Separation Benefits Following A Change in Control of the Agricultural Products Business and Basf Corp., Defendants.**

**No. CIV. 01–5446.**

United States District Court, D. New Jersey.

Oct. 1, 2003.

---

Robert Frederick Hermann, Hermann & Hermann, Westfield, NJ, for Plaintiff.

Theresa Donahue Egler, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, Glenn E. Butash, Pitney, Hardin, Kipp & Szuch, LLP, Florham Park, NJ, for Defendants.

## *OPINION*

HOCHBERG, District Judge.

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment and upon Defendants' cross-motion

for Summary Judgment. This Court has fully reviewed the submissions and the oral arguments presented by the parties. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**FACTS:**

Plaintiff, Robert Woodbury, a former employee of American Home Products Corp. ("AHPC"), contends that he was wrongfully denied "Separation Benefits" after he voluntarily terminated his employment following the divestiture of the department in which he worked. In anticipation of the divestiture, AHPC created a "Plan on Separation Benefits Following a Change in Control of the Agricultural Products Business" ("the Plan"). Plaintiff argues that he is entitled to separation benefits under the Plan because he had "good reason" to terminate his employment. Plaintiff requests summary judgment on his claim of entitlement to benefits. Defendants have cross-moved for summary judgment on their claim that the Plan Administrator's decision denying the Plaintiff separation benefits was reasonable.

The dispute between the Plaintiff and the Defendants revolves around an interpretation of part (d) of the "good reason" clause of the Plan. The Plan provides separation benefits to employees who terminate employment for "good reason." Part (d) of the "good reason" clause states that "good reason" includes "a material reduction in employee benefits made available under the successor's benefits plan from and after the Closing Date."

According to Woodbury, the plain language of part (d) indicates that the benefits offered by AHPC must be compared to those offered by BASF to determine whether there has been a material reduction. Woodbury determined that there was a material reduction in the benefits he would receive from BASF as compared to those he had been receiving from AHPC. Consequently, Woodbury rejected BASF's offer of employment and requested separation benefits, citing part (d) of the good reason clause. BASF denied Woodbury's request, stating that the benefits offered under the prior AHPC plan were irrelevant. According to Defendants, the language of part (d) requires only a comparison of the benefits offered under the BASF benefit plan in place on the Closing Date of the divestiture with benefits offered by a subsequent BASF plan.

**ANALYSIS:**

A. *Standard of Review:*

First, this Court must determine which standard of review it must apply to the Plan Administrator's decision to deny Plaintiff separation benefits. To answer this question, the Court must determine whether the Administrator was granted discretion to make decisions regarding eligibility for benefits. If so, the Court must determine next whether the Administrator operated under a conflict of interest. When a plan grants an Administrator discretion to determine eligibility for benefits, the arbitrary and capricious standard of review, rather than *de novo* review, is appropriate. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989). However, when the Administrator operates under a conflict of interest, the Court applies less deference under the arbitrary and capricious standard. *Smathers v. Multi–Tool, Inc.,* 298 F.3d 191, 198–199 (3d Cir.2002).

Because the Plan granted the administrator discretion to make decisions regarding eligibility for benefits (Plaintiff's Ex. 14, p. 8), the arbitrary and capricious standard for review is appropriate. However, this Court will apply a decreased level of deference under the arbitrary and capricious standard because R.J. Thomas, the Plan Administrator and the Director of

Compensation and Benefits for BASF, operated under a conflict of interest. *Smathers*, 298 F.3d at 198–199.

Although the fact that an employer administers its plan does not necessarily create a conflict of interest, in this case, there are additional factors that indicate a conflict of interest and require heightened scrutiny:

- Thomas adopted entirely the decision recommended by John M. Johnson, counsel for BASF.

- BASF counsel devoted considerable effort to research its ability to avoid paying benefits under the Plan. BASF planned to create a Retirement Committee consisting of BASF employees only, to ensure that the Committee was not biased in favor of AHPC personnel.

- The Plan is unfunded. In this situation, a conflict may exist where payouts would come from the employer's profits. Because the Purchase Agreement did not include a transfer of assets from AHPC that would fund the Plan, BASF would pay for separation benefits for AHPC employees from its own profits. While this factor alone does not create a conflict of interest, it is considered together with other factors. *Smathers*, 298 F.3d at 198–199; *Skretvedt v. DuPont*, 268 F.3d 167, 174–175 (3d Cir.2001).

- Plaintiff is no longer employed by the Administrator. A conflict is more likely in such a situation. The employer does not have the incentive to avoid loss of morale and higher wage demands because the individual to whom benefits are denied does not interact at work with existing employees.

*Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 388–389 (3d Cir.2000); *Smathers*, 298 F.3d at 197; *Skretvedt*, 268 F.3d at 174–175.[1]

### B. *Contract Interpretation:*

When parties contest the meaning of a contractual provision, the Court must first determine whether the terms of the contract are ambiguous or not. A contractual provision is not ambiguous if "the contrac-

---

**1.** The Plaintiff argues that *de novo* review should apply because BASF was not properly authorized to administer the Plan. This Court finds that BASF was properly authorized as a result of the divestiture and the Purchase Agreement, which included an Amendment authorizing BASF to administer most portions of the Plan. This Court recognizes that BASF has not produced evidence to prove that it filed the appropriate forms with the Department of Labor regarding the change in the named Administrator. 29 U.S.C. § 1024(a)(1)(D). However, the 60–day time limit imposed for filing these forms had not run by the time Plaintiff terminated his employment. BASF has shown that it did clearly communicate to the Plaintiff that BASF has been appointed as Administrator pursuant to the Amendment to the Purchase Agreement. The fact that the administrator was appointed after the Plaintiff made his initial claim does not invalidate the administrator's discretion. *See Smathers*, 298 F.3d at 196. Regardless, this Court's decision regarding the proper interpretation of part (d) of the Plan would be the same under both arbitrary and capricious review and *de novo* review. The only difference that would result from an application of *de novo* review is that this Court would have discretion to compare the proper plans itself or to remand to the Administrator. *Lasser v. Reliance Standard Life Ins. Co.*, 130 F.Supp.2d 616, 627 (D.N.J.2001)(citing *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184–1185 (3d Cir. 1991)). This court would choose to remand even under *de novo* review, because the Plan Administrator is better suited to compare the benefits offered by AHPC with those offered by BASF. Therefore, this issue is not outcome determinative.

The Defendants argue that the Administrator did not operate under a conflict of interest. Although this Court rejects this argument, the outcome would be the same even under ordinary arbitrary and capricious review as the Administrator's decision undermines the clear purpose of the Plan and is contrary to the plain meaning of the terms in the Plan.

tual language is subject to only one reasonable interpretation." *Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415, 420–421 (3d Cir.1999)(quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir.1999)). To determine whether ambiguity exists, the Court looks first to the plain language of the Plan, in the context of the contract as a whole. *Bill Gray Enterprises, Inc. v. Gourley*, 248 F.3d 206, 218 (3d Cir.2001); *Mastrobuono v. Shearson, Lehman, Hutton, Inc.*, 514 U.S. 52, 63, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir.1997). If the court determines that the terms are unambiguous, it may not consider extrinsic evidence. However, in making its initial determination as to whether the contract is ambiguous or not, this Court does not rely solely on its reading of the terms. The Court should not "simply determine whether, from our point of view, the language is clear." *Teamsters Industrial Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir.1993). Rather, the Court must consider other evidence such as the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. *Id.; International Union, United Automobile, Aerospace & Agricultural, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 142 (3d Cir.1999); *Sheet Metal Workers, Local 19 v. 2300 Group, Inc.*, 949 F.2d 1274, 1284 (3d Cir.1991). At the very least, this extrinsic evidence should be considered to determine whether the parties intended some meaning other than the plain meaning of the terms. *In re Unisys Corp.*, 97 F.3d 710, 714 (3d Cir.1996). While the Court does not rely on this extrinsic evidence in making its initial determination of whether ambiguity exists, it looks to the extrinsic evidence to confirm its analysis.

### C. The Administrator's Decision Must be Reversed Under the Arbitrary and Capricious Standard:

 Under the arbitrary and capricious standard, a court may reverse a Plan Administrator's decision only if "it is without reason, unsupported by the evidence, or erroneous as a matter of law." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir.1997). Applying this standard, this Court finds that the Plan Administrator's decision was arbitrary and capricious on two independent grounds. First, the Plan Administrator's decision is arbitrary and capricious because it is not rationally related to a valid plan purpose. *Dewitt v. Penn–Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir.1997). Second, the decision it is contrary to the plain language of the plan (*see, e.g., Mitchell*, 113 F.3d at 442–443), or, in other words, erroneous as a matter of law.

### 1. The Administrator's Decision is Not Rationally Related to a Valid Plan Purpose:

The Plan Administrator's interpretation is not rationally related to a valid plan purpose. The Plan was drafted by AHPC in anticipation of its desire to divest its Agricultural Products Division. The purpose of the Plan was to reassure employees that their job responsibilities, salaries, and benefits would not be materially reduced after the divestiture. AHPC hoped this would prevent employees from resigning as the company explored divestiture, thereby ensuring that the value of the division being sold would be retained for the benefit of both AHPC and BASF.

The following hypothetical illustrates why Defendants' interpretation, which examines only those benefits offered by BASF, and ignores those benefits offered by AHPC, contravenes the purpose of the Plan. If BASF offers only one-eighth of

the benefits that AHPC had provided to its employees, the Defendants' interpretation of part (d) would find that these employees would not have "good reason" to separate. In drafting the Plan, AHPC could not have intended such an absurd result, and Defendants have proffered no evidence that AHPC had a valid Plan purpose in support of such an interpretation. Defendants contend that the purpose of part (d) was to prevent BASF from "pulling a bait and switch," but no evidence was offered in support of such a motive. Moreover, this alleged purpose would not serve the overall Plan purpose of encouraging AHPC employees to remain in their positions as AHPC explored divestiture, because the employees would have had no basis to believe that their benefits initially offered by BASF on the closing date would be substantially comparable to their then-existing AHPC benefits. The example cited above illustrates that the Plan Administrator's interpretation of the clause is not rationally related to a valid plan purpose, but rather, undermines the Plan's purpose. It is fatuous to argue that employees would remain in place if they knew that they would have no entitlement to separation benefits under the "good reason" clause, even if BASF cut their benefits package by eighty percent on the day of the Closing. There is no evidence that employees were told that a material reduction in benefits would occur only if BASF effected an additional cut in benefits (for example from eighty percent to ninety percent) after the Closing date.

**2.** *The Plan Administrator's interpretation of part (d) is contrary to the Plain Language of the Plan:*

A second and independent basis to reverse the Plan Administrator's decision is because it conflicts with the plain language of the Plan. To determine that the Administrator's decision was arbitrary and capricious on the grounds that it is con-

trary to the plain language of the plan, this Court must determine whether the terms of the Plan are unambiguous. As described in Section B, *supra,* to make this determination, the Court determines whether there is only one reasonable interpretation of the contract. *Sanford Inv. Co., Inc.,* 198 F.3d at 420–421. In light of the obvious purpose of the Plan, to reassure AHPC employees that their job status, benefits, and salaries would not be substantially reduced pursuant to the divestiture, the only reasonable interpretation of part (d) of the Plan is to compare the benefits offered by AHPC with those offered by BASF.

To determine whether ambiguity exists, this Court first looks at the plain language of the Plan, in the context of the contract as a whole. *Bill Gray Enterprises, Inc.,* 248 F.3d at 218; *Mastrobuono,* 514 U.S. at 63, 115 S.Ct. at 1219; *Mitchell,* 113 F.3d at 443. Although the plain language is our principal consideration, the Court considers other evidence to ensure that it is correct in determining that the language is not ambiguous. *Teamsters Industrial Employees Welfare Fund,* 989 F.2d at 132; *Skinner Engine Co.,* 188 F.3d at 142; *Sheet Metal Workers, Local 19,* 949 F.2d at 1284; *In re Unisys Corp.,* 97 F.3d 710, 714 (3d Cir.1996).

Applying this procedure to analyze the meaning of the terms of part (d), this Court determines that the Plan is unambiguous. A careful reading of part (d) of the Plan, in light of the other provisions and the purpose of the Plan, indicates that Plaintiff's interpretation is the only reasonable one. The term "from and after the Closing date" simply means that the date of the Closing (June 30, 2000) is included in the comparison. This term in no way eliminates AHPC benefits from the comparison. In light of the Plan as a whole, the clause clearly means that BASF benefits in place on June 30 and thereafter will

be compared to AHPC benefits in place until June 30, 2000. The example recited in Section C(1) above illustrates that the Defendants' contrary interpretation is unreasonable. It is illogical to believe, without some supportive evidence, that the parties intended the terms in the Plan to deny good reason for termination to those who would be offered only a small fraction of the benefits they had received from AHPC.

Although the plain language of the Plan, together with its stated purpose, clearly indicate that the terms of part (d) are not ambiguous, this Court reviewed the alternative interpretation offered by the Defendants, along with the extrinsic evidence, to ensure that the parties did not intend some other meaning. *See e.g., Unisys Corp.*, 97 F.3d at 715 (explaining that a court may " 'hear the proffer of the parties and determine if there is objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible to different meanings.' ") (quoting *Mellon Bank. N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980)).[2] The Defendants have not offered any persuasive evidence to show that the terms in part (d) require only a comparison of the benefits offered by BASF at the Closing to those offered by BASF at a later date, rather than a comparison of AHPC benefits with BASF benefits, as the plain language, in light of the Plan as a whole, indicates is proper.

Defendants present two main arguments to support their reading of part (d). Neither are persuasive. First, Defendants provide an explanation of a statement in the memorandum submitted with the Plan. The statement indicates that employees are ineligible to receive separation benefits if the successor established a benefit plan offering equivalent severance and **welfare** benefit coverage (emphasis supplied). Defendants argue that according to this statement, if any comparison at all was intended, the comparison only related to **welfare** benefits, which do not include pension and retirement benefits. However, a reasonable person, who is not trained as an ERISA lawyer, would not understand part (d) to exclude pension and retirement benefits. This is especially true in light of AHPC's own brochure which includes a description of retirement and pension benefits in its outline of the Personal Benefits offered to employees. Second, Defendants argue that the purpose of part (d) was to prevent a "bait and switch" by BASF. Defendants have presented no support for this interpretation which, as discussed above, does not support the overall Plan purpose.

The Court also considered the evidence offered by the Plaintiff to ensure that the Court's view that the language is unambiguous is correct. The evidence offered by the Plaintiff indicates that the parties did not intend the terms to have a meaning other than the plain meaning ascertained by this Court. For instance, Plaintiff has produced emails from AHPC and BASF personnel indicating that Woodbury's interpretation of part (d) was correct. The emails stated that Woodbury was not entitled to the separation benefits because BASF's plan offered benefits that were substantially equivalent in value to those offered under AHPC's plan, showing they interpreted part (d) to require a comparison of benefits offered by the two companies.[3] Other documents also support this

---

**2.** Of course, because this Court finds that the Plan is not ambiguous, this Court does not rely on the extrinsic evidence.

**3.** These emails reached a different conclusion than Plaintiff about whether the AHPC and BASF benefits were substantially the same, but this Court does not reach that fact question at this time. Rather, this Court is looking solely to determine the proper benefits plans to compare.

Court's reading of the plain language of the Plan. The memorandum and Question and Answer sheet circulated with the Plan indicated that its purpose was to reassure employees as AHPC explored divestiture. Finally, a Presentation regarding the Plan suggested that separation benefits would be available if benefits offered by BASF were less favorable in the aggregate than those offered by AHPC.

### D. *Remand to the Administrator:*

Under the arbitrary and capricious standard, this Court remands to the Administrator to compare the benefits offered by AHCP with those offered by BASF because the Court is limited to the record before the Administrator. *See Lasser*, 130 F.Supp.2d at 627. Remand is proper because additional evidence is necessary to determine whether the benefits under the two different plans are materially different in value. *Lasser*, 130 F.Supp.2d at 629 (noting that remand is appropriate when an administrator, operating under a conflict of interest, intentionally fails to develop an element of the claim); *Mitchell*, 113 F.3d 433, 436 (noting that the lower court had remanded the case to the Administrator to review additional evidence to determine whether or not the Plaintiff was totally disabled); *Sokolowski v. Allied–Signal, Inc.*, 735 F.Supp. 163, 166 n. 2 (E.D.Pa.1990)(explaining that when new evidence is presented to the court to support a claim for benefits, the case should be remanded to the Administrator). Here, the Administrator, whether because of his conflict of interest, or for some other reason, failed to make the proper comparison. Because the Administrator misperceived his task, this Court must remand to allow the Administrator to make the proper comparison. *Smathers*, 298 F.3d at 200 (holding that where the Administrator misperceived its task, the case should be remanded to the Administrator).

### CONCLUSION:

Because this Court has determined that the Plan Administrator's decision denying separation benefits to the Plaintiff was not rationally related to a valid plan purpose and was contrary to the plain meaning of the terms of the Plan, Plaintiff's motion for Summary Judgment is granted in part. Defendants' request for summary judgment is denied.

The case is remanded to the Plan Administrator for a comparison of all of the benefits offered by AHPC to the Plaintiff with those offered to the Plaintiff by BASF. In comparing the benefits offered by AHPC to the Plaintiff with those offered by BASF, the Administrator shall compare **all** the benefits listed in the "Summary of AHPC Employee Benefits" on page 19 of AHPC's 1999 Personal Benefits Statement, (Plaintiff's Ex. 5), including retirement, stock option, and pension benefits, with the benefits offered by BASF. The Defendants shall produce to Plaintiff all consultants' reports comparing the respective plans. Finally, the Defendants shall schedule a hearing before the Plan Administrator within 30 days of the date of this order, unless the Plaintiff seeks additional time.