

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-13-2006

# RCN Corp Inc v. Paramount Pavilion

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"RCN Corp Inc v. Paramount Pavilion" (2006). *2006 Decisions.* Paper 1597.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1597

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 04-1933 & 04-1971

———

RCN CORPORATION

v.

PARAMOUNT PAVILION GROUP, LLC; JAMES W. GALLEY; JOHN C. KEEFE;
ROBERT M. FYRER; D & M REALTY, LLC.

> Paramount Pavilion Group, LLC; James
> W. Galley; John C. Keefe,
>
> Appellants at No. 04-1933

———

RCN CORPORATION

v.

PARAMOUNT PAVILION GROUP, LLC; JAMES W. GALLEY; JOHN C. KEEFE;
ROBERT M. FYRER; D & M REALTY, LLC.

> Robert M. Fyrer,
>
> Appellant at No. 04-1971

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-1706)
District Judge: Honorable R. Barclay Surrick

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 30, 2006

Before: McKEE, VAN ANTWERPEN, and SILER,[*] Circuit Judges.

(Filed February 13, 2006)

____

OPINION OF THE COURT

____

VAN ANTWERPEN, Circuit Judge.

In these two cases, which have been consolidated for appeal, appellants seek review of the decisions of the District Court granting summary judgment to appellee RCN Corporation against all appellants, and denying various appellants' motions for summary judgment and motions for reconsideration. Appellant Fyrer also seeks attorney's fees and costs incurred while defending against RCN's motion, later withdrawn, to dismiss Fyrer's appeal for Failure to Timely File a Brief. For the reasons set forth below, we will affirm the District Court's grant of summary judgment to RCN and deny Fyrer's motion for attorney's fees.

I.

Because we write solely for the benefit of the parties, we state the facts only as they pertain to our analysis.

In 1999-2000, the Paramount Pavilion Group, LLC ("PPG") sought financial backers for a plan to build an ice rink in Bethlehem, PA, as part of a larger multi-party effort to

____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

redevelop a Bethlehem Steel Corporation property. PPG entered into negotiations with RCN Corporation, a telecommunications company, to sell the naming rights for the proposed ice rink. These negotiations resulted in a Promotional Agreement signed by the two parties on August 1, 2001, in which PPG agreed to name the ice rink the "RCN Center," and RCN promised to pay PPG a total of $2,000,000 in a series of installment payments when PPG reached milestones set in the Agreement. When the Agreement was signed, RCN had already paid $175,000 of the total owed.

The first relevant milestone was detailed in ¶ 5(c) of the Agreement, wherein RCN promised to pay to PPG as follows:

> "Within five (5) business days of receipt by RCN of a copy of a fully executed loan commitment from PPG's lender to finance the Facility (such copy to be certified by a manager of PPG as true, complete and correct, and as having been duly authorized, executed and delivered by PPG to such lender), the sum of One Hundred Twenty-five Thousand Dollars ($125,000.00)."

The second relevant milestone occurred after the "ground breaking." As originally agreed-to, ¶ 5(d) of the Agreement committed RCN to pay PPG "[p]rovided that the ground breaking for the Facility occurs prior to September 1, 2001, then promptly upon such ground breaking, the sum of" $200,000. "Ground breaking" was not originally defined.

The Agreement provided various mechanisms for the parties to terminate the Agreement, notably upon a party's default; relevant here is ¶ 24(a)(ii) of the Agreement, which deemed a default if "PPG fails to break ground for the Facility by September 1, 2001." Upon missing this deadline, RCN was entitled to give notice of its intention to terminate the

3

Agreement, ¶ 24(b)(i), and PPG was required to reimburse all payments made by RCN within 15 days of termination, ¶ 24(b)(ii).

At the same time that the Agreement was signed, RCN signed a separate Guaranty with PPG's three principals, appellants James W. Galley, John C. Keefe, and Robert M. Fyrer, in which appellants promised to guaranty, against any default by PPG, up to $75,000 plus interest, attorney's fees, and costs up to a certain percentage of the debt. The Guaranty specified that appellants' guaranty obligations would terminate automatically "upon the satisfaction of the condition in Section 5(c) of the Agreement, which gives rise to RCN's obligation to make a $125,000 payment to PPG."

After the Agreement was signed, PPG sought financing for the project. On August 11, 2001, the Royal Bank of Pennsylvania sent RCN a letter notifying RCN that PPG had "fully executed the Bank's Commitment Letter as of August 11, 2001," regarding two loans, and "we expect the transaction will be closed on or before September 28, 2001." Also enclosed was a letter from Royal Bank to PPG outlining terms of the approved loans, "subject to the terms and conditions referred to below." A full version of Royal Bank's letter, which included the terms and conditions, was sent by PPG to RCN on August 17, 2001. Relevant here is Condition 17, which stated as follows:

> "The agreement with RCN Telecommunications for the naming rights to the arena shall be satisfactory to the Bank. The naming rights agreement with RCN Telecommunications shall be collaterally assigned to the Bank as security for the Loans. The full amount of the payments to be made by RCN Telecommunications pursuant to the naming rights agreement ($2,000,000) shall be deposited in escrow with the Bank prior to closing or guaranteed by a letter of credit in form and substance

4

satisfactory to the Bank from a financial institution satisfactory to the Bank." The assignment of the Agreement as collateral had been contemplated and authorized by the Agreement. This letter did not use the phrase "loan commitment." At the time PPG executed the letter, it paid a non-refundable $50,000 loan fee to Royal Bank.

After receipt of these letters and discussions between counsel and management, RCN paid PPG $125,000. Following this payment, appellant Galley asked RCN to put $1.7 million into escrow so that PPG could satisfy Condition 17 of the loan offer.[1] RCN had internally concluded that *PPG* was bound by Condition 17 to place the required money into escrow or take out a letter of credit, not RCN; after consulting with counsel, RCN refused to take the requested actions on the ground that they were not required by the Agreement. Further negotiations about alternate financing options, which also required RCN to advance money, seek credit or "bridge" financing, fell through and Royal Bank withdrew its loan offer; PPG forfeited its $50,000 loan fee. PPG presented RCN with a new possible financing commitment from a different bank on August 30, 2002.

Meanwhile, after the initial deadline set for ground breaking had passed, the parties amended the Agreement on February 28, 2002, to set a new ground breaking deadline of September 1, 2002, and to define "ground breaking" as follows:

"Ground Breaking. For the purposes of this Agreement, by way of clarification, the

---

[1]PPG also stated at this time that "[a]s you know, we have broken ground. What do you need from us to complete this phase of fundind (sic)." RCN throughout denied that PPG had done anything constituting "ground breaking," as we will discuss *infra*.

term 'ground breaking' as used throughout the Promotional Agreement, as amended, shall mean the occurrence of *any substantial activity which indicates that the start of construction of the Facility is underway*. Activities which shall not signify ground breaking include, without limitation, steps taken in anticipation of construction such as ground testing, soil sampling and similar activities, ceremonial ground breaking activities, and any activities which have occurred prior to the date of this Amendment."

Amendment ¶ 9 (emphasis added). Prior to September 1, 2002, appellant Galley allegedly told RCN that no excavation or construction activity would occur before that crucial date. An RCN official viewed the property around September 1, and saw no visible evidence that construction was underway; an RCN engineer who later investigated the property and sought to find building permits confirmed the lack of activity. RCN notified PPG on September 4, 2002, that it was going to terminate the Agreement because PPG had defaulted by failing to break ground by the deadline, and RCN demanded the return of all paid money as per the Agreement's terms. PPG refused, and negotiations to add a Second Amendment fell through. PPG eventually was forced to sell the property to D & M Realty, LLC, after failing to find other financing options.

RCN thereafter filed this diversity suit[2] against PPG to recover the $300,000 owed under the Agreement; against appellants Galley, Keefe, and Fyrer to recover on the Guaranty agreement; and against D & M Realty as the alleged successor to PPG's liability on the

---

[2]All appellants are citizens of Pennsylvania; RCN is a citizen of New Jersey and Delaware. The District Court therefore had jurisdiction under 28 U.S.C. § 1332.

6

Agreement.[3] PPG counterclaimed to recover the $50,000 loan application fee forfeited when RCN refused to put money into escrow or secure a letter of credit, to force RCN to make the installment payment due upon ground breaking, and to recover damages for RCN's alleged breach of the duty of good faith. After discovery all parties except PPG filed motions for summary judgment. On March 11, 2004, the District Court granted RCN's motion for summary judgment against all appellants, ruling 1) that PPG had materially breached the Agreement by failing to break ground by September 1, 2002, and thereafter refusing to repay RCN's money as required by the Agreement upon default and termination; and 2) that the Royal Bank letter did not constitute a "loan commitment" within the meaning of ¶ 5(c) of the Agreement, therefore the individual appellants were still liable to RCN on the Guaranty agreement.

Appellants PPG, Galley, and Keefe now appeal the District Court's March 11, 2004 Order. Appellant Fyrer filed a Motion for Reconsideration on the ground that he had divested himself of liability by contracting to withdraw from PPG and transfer interests and liabilities to that entity. The District Court denied this motion on March 25, 2004, and appellant Fyrer now appeals that Order. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we have consolidated the two cases for appeal. We will affirm the District Court's grant of summary judgment to RCN in both cases, and deny appellant Fyrer's subsequent motion

---

[3]The District Court dismissed claims against D & M on March 3, 2004; RCN does not appeal this dismissal.

7

for attorney's fees.

We exercise plenary review over the District Court's grant of summary judgment, and apply the same standard as the District Court. Citizens for Health v. Leavitt, 428 F.3d 167, 175 (3d Cir. 2005). "To affirm the grant of summary judgment, we must be convinced that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law when the facts are viewed in the light most favorable to the nonmoving party." Id. (quoting Fed.R.Civ.P. 56(c)). When contract interpretation is an issue, summary judgment is appropriate only if "the contractual language is subject to only one reasonable interpretation." Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 420-21 (3d Cir. 1999) (quoting Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999)). Our review of the District Court's denial of a motion for reconsideration is plenary where the denial was based on "the interpretation and application of a legal precept"; otherwise, we review for abuse of discretion. Koshatka v. Phila. Newspapers, Inc., 762 F.2d 329, 333 (3d Cir. 1985).

III.

**A. Ground Breaking**

The District Court held that PPG materially breached the Agreement because PPG had failed to break ground, as the term is defined in the amended Agreement, by September 1, 2002, and then failed to repay RCN's money following default and termination. We agree

8

with the District Court's conclusion that "ground breaking" is unambiguous, and that the unambiguous meaning supports RCN's contentions.

Prior to the amendment to the Agreement, PPG had asserted that it had already broken ground by, for example, removing subsurface foundations and obtaining financing. RCN did not believe that this constituted ground breaking, and therefore drafted the amendment to exclude from the definition of "ground breaking" all work already done and anything constituting mere anticipation of construction. Instead, ground breaking required "substantial activity which indicates that the start of construction of the Facility is underway." Amendment ¶ 9. While we do not necessarily agree with the District Court that this term required actual physical construction of the facility, we do agree that the steps which PPG allege satisfied the ground breaking requirement are mere "steps taken in anticipation of construction," and therefore cannot satisfy ¶ 9's requirements.[4] Similarly, if obtaining financing was synonymous with "ground breaking" as alleged by PPG, there would be no need for separate payment milestones for obtaining financing (¶ 5(c)) and ground breaking (¶ 5(d)). We will not read one provision so as to render another provision of the contract superfluous.

Combined with the complete lack of activity at the project site, PPG's own admissions

_____

[4]PPG averred in interrogatories that the sole activities which it claims rise to the level of ground breaking are: obtaining the "necessary financing commitment for the start of construction," applying for building permits, retaining appellant Galley to oversee construction, updating a market feasability study, receiving approval of the parking lot design, and obtaining leases with various hockey organizations.

amply support RCN. PPG was in default under ¶ 24(a)(ii) of the Agreement by failing to break ground by September 1, 2002, and RCN was entitled to terminate the Agreement under ¶ 24(b)(i). By failing to repay the $300,000 owed to RCN under the Agreement, PPG was in breach of contract.[5] We therefore affirm the District Court's grant of summary judgment to RCN against PPG in the amount of $300,000 plus interest.

## B. Guaranty Liability

The District Court determined that in light of the condition attached to Royal Bank's loan offer, it did not constitute a "loan commitment" within the meaning of ¶ 5(c) of the Agreement, and therefore did not release the individual appellants from their Guaranty to RCN. We agree. Regardless of whether Condition 17 is read to require PPG or RCN to place the needed money in escrow or obtain a letter of credit, neither party could satisfy the condition. RCN was in no way required to make such a financial commitment under the Agreement, and PPG flatly refused. Such a "loan commitment" necessarily implies a degree of finality and binding, even if a full closing is not required and terms inevitably change before such closing. RCN is not estopped from arguing that the letter was not a loan commitment by the mere fact that it initially paid the $125,000; while parties' conduct can

---

[5]Contrary to PPG's assertions, we fail to see how this breach could be immaterial, given the presence of a Time is of the Essence clause–enforceable under Pennsylvania law–and the nature of the building in question, an ice rink, which needed to be open for the fall/winter season. It is irrelevant that another company was subsequently able to meet the same opening date, September 1, 2003, while beginning construction after September 1, 2002.

be used to explain the terms of a contract, we will not read this conduct to change the unambiguous meaning of a contract term. Nor, contrary to appellant Fyrer's confusing argument, will we change the words "loan commitment" in the Agreement and incorporated into the Guaranty, to read "mortgage commitment."

Because the District Court correctly determined that the Royal Bank letter did not constitute a "loan commitment" under Agreement ¶ 5(c), appellants Fyrer, Keefe, and Galley were not released from their Guaranty obligations. We therefore affirm the District Court's ruling holding individual appellants accountable to RCN on the Guaranty.

### C. Appellant Fyrer's Motion for Reconsideration

We find no merit in the argument that appellant Fyrer is no longer liable on the Guaranty merely because he executed a "Transfer of Membership Agreement" purporting to transfer his liabilities to PPG. His Guaranty liability attached to him as an individual, not as a member of PPG. Moreover, Fyrer did not even attempt to refute this latter point in this Court. The District Court addressed the liability of PPG as an entity to RCN on the Agreement, and individual guarantors to RCN on the Guaranty; the District Court did not endeavor to sort out the corporate structure of PPG in either of its March 11, 2004, or its March 25, 2004, Orders. Accordingly, we affirm the District Court's refusal to grant Fyrer's Motion for Reconsideration on these grounds.

### D. Appellant Fyrer's Motion for Attorney's Fees on Appeal

Appellant Fyrer filed a motion with this Court on August 12, 2005, seeking attorney's

fees in the amount of $1,000 for services allegedly incurred in responding to and defending against RCN's motion to dismiss Fyrer's appeal after his brief was filed out of time. Fyrer alleges that after RCN filed its motion, Fyrer's counsel, *inter alia*, endeavored to persuade RCN to drop its motion by convincing it that the brief was in fact timely-filed, and drafted a motion for sanctions against RCN. We find no merit to the Motion, and will deny it. RCN was fully entitled to file a motion to dismiss based on an untimely brief, as simple inspection of the docket sheet in this case shows the paper brief was technically filed out of time. We understand the parties' confusion with the docket given that it did not include an entry for receipt of the electronic version of Fyrer's brief, and did not reflect the Clerks Office's determination that the brief would be accepted as timely. However, confirming that the brief was timely required information which Fyrer's counsel conceded *was not available* to RCN, and which Fyrer's counsel did not provide to RCN until ten days after RCN's motion to dismiss was filed. Immediately upon receipt of this information, and after speaking with Clerks of this Court, RCN withdrew its motion to dismiss. RCN does not become liable for attorney's fees for failing to withdraw the motion before Fyrer even gave RCN the relevant information. Accordingly, we will deny the Motion.

IV.

For the foregoing reasons, we conclude that the District Court properly granted RCN's motion for summary judgment against PPG and individual appellants Fyrer, Keefe, and Galley, and will affirm. We will also affirm the District Court's denial of Fyrer's Motion for

12

Reconsideration. We will deny Fyrer's motion for attorney's fees. We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.